

## IN THE
## TENTH COURT OF APPEALS

### No. 10-15-00035-CV

**TEXAS A&M UNIVERSITY, MARK HUSSEY, PH.D.
IN HIS OFFICIAL CAPACITY AS INTERIM PRESIDENT
OF TEXAS A&M AND DAVID VAUGHT, PH.D.,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS
DEPARTMENT HEAD OF DEPARTMENT HISTORY,**

**Appellants**

 **v.**

**ERNEST STARKS, PH.D.,**

**Appellee**

**From the 272nd District Court
Brazos County, Texas
Trial Court No. 14-001701-CV-272**

## OPINION

In this accelerated appeal, Texas A&M University, Mark Hussey, Ph.D., in his

official capacity as Interim President of Texas A&M University, and David Vaught, Ph.D.,

individually and in his official capacity as Department Head of the Department of

History, appeal the trial court's interlocutory order denying their plea to the jurisdiction

and motion for summary judgment.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5),

(8) (West Supp. 2015).  We will affirm in part and reverse in part.

## Background

Ernest Starks, Ph.D., has sued TAMU, Hussey, and Vaught, alleging the following:

He is an African-American male over the age of forty and a full professor in TAMU's

history department; he has been a TAMU faculty member for nearly twenty years.  As a

faculty member, he has spoken out regarding TAMU's "unwillingness to establish a

workplace that reflects equal and fair opportunity for African-Americans within its

faculty and administrative ranks."  He has spoken out at faculty meetings and to faculty

colleagues about the lack of racial and ethnic diversity within the Department of History

specifically.  Furthermore, as a TAMU professor, he has experienced the following

"recent acts of discrimination and retaliation":

- On April 12, 2013, Starks applied for the position of Faculty Ombuds Officer at TAMU, and the job announcement indicated that the position was to be filled by a full professor.  At the time, Clare Gill, a younger white female, was an associate professor.  In September 2013, Gill was promoted to full professor, and TAMU then announced that she had been selected for the Faculty Ombuds Officer position.  "The decision to select a less qualified, white, younger, female over Starks, was an act of discrimination and retaliation towards him."

- On August 30, 2013, in "an act of discriminatory animus," Vaught issued a written reprimand to Starks, falsely accusing him of violating departmental guidelines regarding the preparation of syllabi.  Starks tried to discuss the matter with Vaught, but Vaught instead prepared another written document that he then circulated to other administrators and faculty.  The document reiterated the false allegations about the syllabi, threatened Starks's future teaching of certain courses, and stated that Starks's conduct would be considered in future performance reviews.  This reaction to a problem with syllabi was unprecedented.

- After filing his Texas Workforce Commission charge of discrimination against TAMU, Starks received an unfairly negative Annual Merit Review and Evaluation for the 2013 Academic Year. To correct his work performance record, Starks provided the Department with a written rebuttal to the Review and made a request that Vaught retract the inaccurate portions of the Review. Vaught refused and continued to take steps to discredit Starks, harm his reputation, and prevent advancement to a high-level position in TAMU administration.

- Because of his "animus towards African-Americans," Vaught has refused to appoint Starks to any departmental committees or programs, despite Starks's willingness to serve and despite other non-African-American faculty members being appointed to serve on multiple committees in an academic year. "Not being allowed to serve in such a role negatively impacts [Starks's] ability to earn merit increases and be considered for advancement to top tier administrative positions."

Based on the foregoing allegations, Starks has asserted causes of action against TAMU, Hussey, and Vaught for employment discrimination and retaliation in violation of sections 21.051 and 21.055 of the Labor Code. Starks has also asserted free-speech retaliation claims against Hussey and Vaught. Starks seeks monetary damages from TAMU and equitable relief from Hussey and Vaught.

TAMU, Hussey, and Vaught (collectively, Appellants) filed a plea to the jurisdiction and motion for summary judgment, which the trial court denied.

## TAMU's Plea to the Jurisdiction

In Appellants' first issue, TAMU contends that the trial court erred in denying its plea to the jurisdiction because it demonstrated that Starks presented no admissible evidence establishing that he timely exhausted his administrative remedies. More specifically, TAMU argues that it demonstrated that (1) the only allegation by Starks that qualifies as an "adverse employment action" and could therefore potentially support

Starks's discrimination claim is the denial of the Faculty Ombuds Officer position and (2) Starks failed to establish that he filed a charge of discrimination within 180 days of being informed of the denial of the Faculty Ombuds Officer position.

> We review a trial court's ruling on a plea to the jurisdiction de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). When a party has filed a plea to the jurisdiction challenging the pleadings, a reviewing court must construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *See id.* If the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause, the plea to the jurisdiction must be denied. *See id.* If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in the jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *See id.* If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *See id.* at 227.

> If in its plea to the jurisdiction a party challenges the existence of jurisdictional facts, the reviewing court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See id.* If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *See id.* at 227-28. However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228. In ruling on a plea to the jurisdiction, a court does not consider the merits of the parties' claims. *See id.* at 226-28; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

*Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 321 S.W.3d 1, 3-4 (Tex. App.—Houston [14th Dist.] 2008), *aff'd*, 320 S.W.3d 829 (Tex. 2010).

We begin with the contention that Starks failed to establish that he filed a charge of discrimination within 180 days of being informed of the denial of the Faculty Ombuds Officer position. Section 21.202 of the Labor Code states, "A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful

employment practice occurred." TEX. LAB. CODE ANN. § 21.202 (West 2015). The timely filing of a complaint is mandatory, and when the defendant is a governmental entity, the failure to timely file is a jurisdictional bar to suit. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 514 (Tex. 2012). The 180-day limitations period begins when the employee is informed of the allegedly discriminatory employment decision. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 493 (Tex. 1996).

Starks was informed that he was not awarded the Faculty Ombuds Officer position on June 29, 2013. The 180-day limitations period thus ended on December 26, 2013. In support of their plea to the jurisdiction, Appellants submitted a copy of Starks's formal "Charge of Discrimination" that shows that it was received by the Texas Workforce Commission, Civil Rights Division, on December 31, 2013. TAMU has therefore shown that Starks did not file his formal "Charge of Discrimination" within 180 days of being informed of the denial of the Faculty Ombuds Officer position.

The supreme court has held, however, that, to satisfy the timeliness requirement, a sworn charge of discrimination filed outside the 180-day limitations period can relate back to the date that the plaintiff filed the employment intake questionnaire. *See Hennigan v. I.P. Petroleum Co.*, 858 S.W.2d 371, 373 (Tex. 1993) (verified complaint related back to and satisfied any deficiencies in unverified questionnaire that was timely filed); *Tex. Tech Univ. v. Finley*, 223 S.W.3d 510, 515 (Tex. App.—Amarillo 2006, no pet.) (charge deemed timely even though dated after deadline because plaintiff's initial complaint letter, which satisfied requirements of proper complaint, filed before deadline). Starks claims that the

evidence shows that although his formal "Charge of Discrimination" was not filed until December 31, 2013, his original complaint was filed on or about November 4, 2013.

After Appellants filed their plea to the jurisdiction and motion for summary judgment, Starks filed his first amended petition with exhibits attached. *See State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 349-50 (Tex. App.—Austin 2009, pet. denied) ("In resolving the jurisdictional challenges presented by the plea, we may … consider evidence that the pleader has attached to its petition or submitted in opposition to the plea."). Starks also filed a response to the plea to the jurisdiction and motion for summary judgment, with exhibits attached, and a sur-reply to the Appellants' reply to his response to the plea to the jurisdiction and motion for summary judgment, with exhibits attached. Starks points in part to the following evidence in the exhibits to show that his complaint was filed on or about November 4, 2013:

(1)     a transmittal letter, dated November 4, 2013, from Starks's counsel to "Intake Officer, Texas Workforce Commission, Civil Rights Division, 101 East 15th Street, #144T, Austin, TX 78778-0001," stating that it was sent via email to EEOIntake@twc.state.tx.us and via certified mail, return receipt requested. The letter states, "Re:  Dr. Ernest Starks – Texas A&M University Department of History – Revised."  The letter also states, "Please find enclosed Dr. Starks's Intake Questionnaire and Charge of Discrimination.  A Charge was submitted on behalf of Dr. Starks on Friday, November 1, 2013.  Please replace that Charge with this document."

(2)     the "Employment Discrimination Complaint Form" from the Texas Workforce Commission, Civil Rights Division, which lists Starks as the complainant.  The form states that it is to be returned by email to EEOIntake@twc.state.tx.us.  It lists the mailing address as 101 East 15th Street, #144T, Austin, TX 78778-0001.  A document entitled "Charge of Discrimination," dated October 31, 2013, is incorporated and attached to the  "Employment Discrimination Complaint

Form." The "Charge of Discrimination" details Starks's discrimination complaints against TAMU and is signed by Starks.[1]

(3)     the USPS "green card" addressed to "Intake Officer, Texas Workforce Commission, Civil Rights Division, 101 East 15th Street #144T, Austin, TX 78778-0001" that shows something was received by the Texas Workforce Commission on November 7, 2013.

TAMU responds that this evidence does not establish that Starks filed anything within the requisite time limit because:

(1)     "the November 4, 2013 transmittal letter, which states that the law firm has 'enclosed Dr. Starks' Intake Questionnaire and Charge of Discrimination,' does not include the certified mail article number found on the 'green card', nor does it include a date stamp from the TWCCRD";

(2)     while the "green card" "shows that a TWCCRD Intake Officer received *something* on or about November 7, 2013, nothing on that 'green card' or the certified mail receipt demonstrates that it was an intake questionnaire from Starks"; and

(3)     "the 'Employment Discrimination Complaint Form,' that allegedly accompanied the November 4, 2013 transmittal letter, does not include any information in the section entitled, 'DATE RECEIVED' which would demonstrate exactly when the form was received by the TWCCRD."

As support for its argument, TAMU also relies on *Tex. Dep't of Pub. Safety v. Alexander*, 300 S.W.3d 62 (Tex. App.—Austin 2009, pet. denied). In *Alexander*, the sixteen plaintiffs were required to file their charges of discrimination no later than May 29, 2002. *Id.* at 70. In response to a plea to the jurisdiction, the plaintiff in question presented as evidence: (1) a copy of her intake questionnaire, signed by her and dated on May 21, 2002, and (2) an affidavit stating that she "filed a charge of discrimination" concerning

---

[1] This is not the formal "Charge of Discrimination" mentioned above that the Texas Workforce Commission, Civil Rights Division, received from Starks on December 31, 2013.

the alleged discriminatory action on or before May 21, 2002. *Id.* at 75. The court held that this evidence was insufficient to show that the plaintiff filed her questionnaire before the 180-day deadline. *Id.* at 76. The court stated, "[T]here must be something else in the record to create a logical bridge between the completed intake questionnaire and the timely filing of that questionnaire." *Id.*

We believe that, in this case, the transmittal letter and USPS "green card" provide the necessary connection. The transmittal letter states that "Dr. Starks's Intake Questionnaire" and "Charge of Discrimination" were sent to the Intake Officer at the Texas Workforce Commission, Civil Rights Division, on November 4, 2013 via email and certified mail, return receipt requested. The email and mailing addresses listed on the transmittal letter for the Intake Officer at the Texas Workforce Commission, Civil Rights Division, are the same email and mailing addresses provided on the "Employment Discrimination Complaint Form" as the proper addresses for where to send the completed form. The USPS "green card" then shows that something was received via certified mail, return receipt requested, at that proper mailing address by the Texas Workforce Commission on November 7, 2013. While this evidence may not conclusively establish that Starks's "Employment Discrimination Complaint Form," along with the incorporated and attached "Charge of Discrimination," were received and filed by the Texas Workforce Commission, Civil Rights Division, on November 7, 2013, the evidence certainly creates a fact question regarding it. *Cf. Cliff v. Huggins*, 724 S.W.2d 778, 780 (Tex. 1987) (explaining that Texas Rule of Civil Procedure 21a regarding service sets up

presumption that letters and notices, when properly addressed, stamped, and mailed, are presumed to have been duly received by addressee).

We therefore conclude that based on the relation-back doctrine, the evidence creates a fact question as to whether a "complaint" was filed within the 180-day limitations period. Because there is a fact issue, the trial court did not err in denying TAMU's plea to the jurisdiction based on the ground that Starks failed to timely exhaust his administrative remedies on his discrimination claim. *See Kirby Lake Dev., Ltd.*, 321 S.W.3d at 4 ("If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied."). We need not reach Appellants' argument that the only allegation by Starks that qualifies as an "adverse employment action" and could therefore potentially support Starks's discrimination claim is the denial of the Faculty Ombuds Officer position. We overrule Appellants' first issue.

### Hussey's and Vaught's Plea to the Jurisdiction

In Appellants' second issue, Hussey and Vaught contend that the trial court erred in denying their plea to the jurisdiction because Starks's free-speech retaliation claim against them in their official capacities is barred by sovereign immunity.

Generally, sovereign immunity deprives a trial court of jurisdiction over a lawsuit in which a party has sued the State or a state agency, unless the Legislature has consented to suit. *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011). A suit against a government employee in his official capacity is a suit against his government employer; therefore, an employee sued in his official capacity has the same governmental immunity, derivatively, as his government employer. *Franka v. Velasquez*, 332 S.W.3d 367,

382-83 (Tex. 2011). But there is an exception: an action alleging that the government employee acted *ultra vires*. *Id.* An *ultra vires* action is one in which the plaintiff seeks relief against a government employee in his official capacity who allegedly has violated statutory or constitutional provisions by acting without legal authority or by failing to perform a purely ministerial act. *See City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73 (Tex. 2009). *Ultra vires* suits do not attempt to exert control over the State—they attempt to reassert the control of the State. *Id.* at 372.

When a plaintiff alleges that a government employee in his official capacity acted *ultra vires*, we must examine whether the plaintiff's petition sufficiently pleaded his claims to defeat the government's plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 226. While a plea to the jurisdiction "does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction," the plaintiffs must do more than merely name a cause of action against the state official and assert the existence of a constitutional violation. *Id.* at 223; *see Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011) (considering merits of equal-protection claim against Secretary of State in reviewing ruling on plea to jurisdiction and explaining that Secretary retained immunity from suit unless plaintiffs pleaded "viable claim"); *City of Paris v. Abbott*, 360 S.W.3d 567, 583 (Tex. App.—Texarkana 2011, pet. denied) (noting that governmental defendant remains immune from suit absent plaintiff's pleading of viable claim). To state a claim within the waiver of sovereign immunity, the plaintiff must plead a facially valid constitutional claim. *See City of Houston v. Johnson*, 353 S.W.3d 499, 504 (Tex. App.—Houston [14th Dist.] 2011, pet. denied).

We begin with Starks's allegations against Hussey. In his first amended petition, Starks states that he is bringing a state constitutional free-speech retaliation claim against Hussey for which he is seeking equitable relief. Starks alleges, "In retaliation for speaking out, Dr. Starks was denied a promotion, excluded from departmental leadership, and given undeserved negative reviews. Dr. Starks has also been kept out of leadership roles at the university." Hussey argues that these pleadings "fell well short of what is required to proceed." Hussey claims that Starks has failed to plead an *ultra vires* claim against him and that, even if Starks has pleaded an *ultra vires* claim against him, Starks has failed to plead a viable free-speech retaliation claim against him.

The proper defendants in an *ultra vires* action are those officials whose acts or omissions allegedly violated the plaintiff's rights. *Montrose Mgmt. Dist. v. 1620 Hawthorne, Ltd.*, 435 S.W.3d 393, 413 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (citing *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621 (Tex. 2011)). Here, even though Starks states that he is bringing a state constitutional free-speech retaliation claim against Hussey, he does not allege in his pleading that Hussey was involved at all in any of the alleged unconstitutional retaliatory conduct against him. In other words, Starks alleges that in retaliation for speaking out, he was denied a promotion, excluded from departmental and university leadership, and given undeserved negative reviews, but Starks does not allege that Hussey had any involvement in the denial of a promotion to him, his exclusion from departmental or university leadership, or his being given undeserved negative reviews. Starks has therefore failed to plead an *ultra vires* claim against Hussey. *See id.; see also Heinrich*, 284 S.W.3d at 372 (stating that to fall within *ultra*

*vires* exception, suit must allege, and ultimately prove, official *acted* without legal authority or *failed to perform* purely ministerial act).

Starks acknowledges as much in his brief, and, citing *City of Dallas v. England*, 846 S.W.2d 957, 960 (Tex. App.—Austin 1993, writ dism'd w.o.j.), states that Hussey is a party because he is one of the officials in authority at TAMU with the power to act on the injunctive relief that Starks requests from the trial court. *England*, however, does not support Hussey's being a proper party even though Starks does not assert that he was involved in any of the alleged unconstitutional retaliatory conduct. Instead, *England* merely supports the general rule that "actions of a state official that are unconstitutional, illegal, wrongful, or beyond statutory authority are not immunized by governmental immunity" and that the proper remedy is for the party to sue the official who committed the actions that are unconstitutional, illegal, wrongful, or beyond statutory authority, not the governmental unit itself. *See id.* Accordingly, the trial court erred in denying Hussey's plea to the jurisdiction because Starks's free-speech retaliation claim against him in his official capacity is barred by sovereign immunity.

We now turn to Starks's allegations against Vaught. Starks makes the same allegations against Vaught as he did against Hussey. Likewise, as with Hussey, Vaught argues that Starks has failed to plead an *ultra vires* claim against him and that, even if Starks has pleaded an *ultra vires* claim against him, Starks has failed to plead a viable free-speech retaliation claim against him.

As stated above, the proper defendants in an *ultra vires* action are those officials whose acts or omissions allegedly violated the plaintiff's rights. *Montrose Mgmt. Dist.*,

435 S.W.3d at 413. In this case, Starks alleges that his state constitutional free-speech rights were violated when, in retaliation for speaking out, he was denied a promotion, excluded from departmental and university leadership, and given undeserved negative reviews. For Starks's allegations to implicate Vaught in the violation of his free-speech rights, Starks must have alleged that Vaught was involved in the denial of a promotion to Starks, his exclusion from departmental and university leadership, and his being given undeserved negative reviews.

Starks does not allege that Vaught had any involvement in the denial of a promotion to him. Starks does not allege that Vaught was involved at all in anything regarding the Faculty Ombuds Officer position. Therefore, Starks has not pleaded an *ultra vires* claim against Vaught by alleging that Starks's state constitutional free-speech guarantees were violated when he was denied a promotion in retaliation for speaking out regarding a matter of public concern. *See id.*; *see also Heinrich*, 284 S.W.3d at 372. Starks does allege, however, that Vaught was involved in refusing to appoint him to any departmental committees or programs. Starks has therefore pleaded an *ultra vires* action against Vaught by alleging that Starks's state constitutional free-speech guarantees were violated when he was excluded from departmental and university leadership in retaliation for speaking out regarding a matter of public concern. *See Montrose Mgmt. Dist.*, 435 S.W.3d at 413; *see also Heinrich*, 284 S.W.3d at 372. Similarly, although Starks does not allege that Vaught affirmatively acted in giving Starks undeserved negative reviews, Starks does allege that Vaught was involved by refusing to retract inaccurate portions of his annual performance review. Therefore, we assume that Starks has

pleaded an *ultra vires* action against Vaught by alleging that Starks's state constitutional free-speech guarantees were violated when he was given undeserved negative reviews in retaliation for speaking out regarding a matter of public concern. *See Montrose Mgmt. Dist.*, 435 S.W.3d at 413; *see also Heinrich*, 284 S.W.3d at 372.

Having concluded that Starks has pleaded an *ultra vires* claim against Vaught, we next turn to Vaught's contention that Starks has failed to plead a viable free-speech retaliation claim against him in his official capacity. The parties agree that to establish a free-speech retaliation claim against a government defendant, a plaintiff must prove the following elements: (1) the plaintiff suffered an adverse employment action, (2) the plaintiff's speech involved a matter of public concern, (3) the plaintiff's interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) the protected speech motivated the defendant's conduct.[2] *See Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011); *Nairn v. Killeen Indep. Sch. Dist.*, 366 S.W.3d 229, 244 (Tex. App.—El Paso 2012, no pet.). Vaught challenges the first and fourth elements.

Vaught first argues that Starks has failed to allege any adverse employment action sufficient to support a free-speech retaliation claim. Vaught contends that the Fifth Circuit has limited "adverse employment actions" to "discharges, demotions, refusals to hire, refusals to promote, and reprimands" and that none of the alleged adverse

---

[2] Starks claims that Vaught violated his right to free speech under the Texas Constitution; however, neither party has argued that the elements of a free-speech retaliation claim under the Texas Constitution differ from the elements of a federal First Amendment retaliation claim. We will therefore use federal constitutional precedent in analyzing Starks's claim. *See Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) ("Where, as here, the parties have not argued that differences in state and federal constitutional guarantees are material to the case, and none is apparent, we limit our analysis to the First Amendment and simply assume that its concerns are congruent with those of article I, section 8.).

employment actions cited by Starks rise to that level. *See Pierce v. Tex. Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands."). Starks responds that the U.S. Supreme Court has instead defined an "adverse employment action" as one that a reasonable employee would find to be "materially adverse," *i.e.*, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination" under federal law. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S.Ct. 2405, 2409, 165 L.Ed.2d 345 (2006) ("[T]he [antiretaliation] provision [of Title VII of the Civil Rights Act of 1964] covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."). Starks argues that, under this standard, he has pleaded an adverse employment action or that there is at least a fact issue concerning whether a "reasonable employee" would find the actions of which he complains "materially adverse." We disagree.

*Burlington* did not address the standard for adverse employment actions in First Amendment retaliation cases; instead, it involved Title VII's antiretaliation provision. *See id.* at 56-57, 126 S.Ct. at 2408-09. The Fifth Circuit has not yet determined whether the *Burlington* standard for adverse employment actions applies to First Amendment retaliation cases. *See Gibson v. Kilpatrick*, 734 F.3d 395, 400 n.4 (5th Cir. 2013), *vacated on other grounds*, 134 S.Ct. 2874 (2014). Likewise, the Texas Supreme Court has not addressed

the issue.  *Cf. Montgomery County v. Park*, 246 S.W.3d 610, 614 (Tex. 2007) (adopting *Burlington* standard with appropriate modifications to define what qualifies as "adverse" personnel action within meaning of Texas Whistleblower Act).  We therefore apply the Fifth Circuit's precedent that, for purposes of First Amendment retaliation claims, "adverse employment actions" are discharges, demotions, refusals to hire, refusals to promote, and reprimands.[3]  *See Juarez*, 666 F.3d at 332 (citing *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999)); *Pierce*, 37 F.3d at 1149.

The adverse employment actions that Starks alleges in his free-speech retaliation claim are the denial of a promotion, his exclusion from departmental and university leadership, and his being given undeserved negative reviews.[4]  We need not determine whether the alleged denial of a promotion to Starks constitutes an adverse employment action; we have already concluded that because Starks has not alleged that Vaught was involved in the denial of a promotion, Starks has not pleaded an *ultra vires* claim against Vaught regarding the denial of a promotion.  Additionally, because Starks has not alleged

---

[3] Some district courts in the Fifth Circuit have formally applied the *Burlington* standard to First Amendment retaliation claims.  *See, e.g.*, *Peyton v. City of Yazoo City*, 764 F.Supp.2d 831, 838 (S.D. Miss. 2011); *Laredo Fraternal Order of Police v. City of Laredo*, No. L-04-134, 2008 WL 678698, at *2 (S.D. Tex. Mar. 12, 2008).  But others have not.  *See, e.g.*, *Jackson v. Tex. S. Univ.*, 997 F.Supp.2d 613, 629, 638, 649-50 (S.D. Tex. 2014).  Starks points out that one of our sister courts, in the context of a First Amendment retaliation claim, did generally define an "adverse employment action" using the *Burlington* standard.  *See Nairn*, 366 S.W.3d at 244.  There was no dispute in *Nairn*, however, about whether the conduct by the plaintiff's employer against her was an adverse employment action; therefore, the *Nairn* court did not address the issue.  *See id.* at 244-45.

[4] In addition to these alleged retaliatory adverse employment actions, Starks alleges that Vaught was involved in issuing a written reprimand to him and then in preparing another written document that Vaught circulated to administrators and faculty and that reiterated the allegations in the reprimand, threatened Starks's future teaching of certain courses, and stated that Starks's conduct would be considered in future performance reviews.  Starks does not allege, however, that Vaught's conduct regarding the reprimand and subsequent document occurred in retaliation for speaking out regarding a matter of public concern.  Instead, Starks refers to this alleged conduct as "discriminatory."

that Vaught was involved in the denial of a promotion, Starks has not alleged facts to support the fourth element of a free-speech retaliation claim against Vaught regarding the denial of a promotion. *See Juarez*, 666 F.3d at 332. The fourth element would require Starks to prove that his speaking out on a matter of public concern motivated Vaught's conduct regarding the denial of a promotion. *See id.* But because Starks does not allege that Vaught was involved with the denial of a promotion, there is no alleged conduct by Vaught that could have been motivated by Starks's speaking out on a matter of public concern.

We therefore turn to Starks's alleged exclusion from departmental and university leadership and his allegedly being given undeserved negative reviews. Regarding his exclusion from departmental and university leadership, Starks alleges that Vaught has refused to appoint him to any departmental committees or programs despite his willingness to serve and despite other non-African-American faculty members being appointed to serve on multiple committees in an academic year. Starks further alleges that departmental program and committee work is an important part of his annual merit review consideration and that not being allowed to serve in such a role negatively impacts his ability to earn merit increases and to be considered for advancement to top-tier administrative positions. Regarding his being given undeserved negative reviews, Starks states in his briefing that he is not complaining that the performance evaluation itself was an adverse employment action. Instead, Starks argues that the adverse employment action committed by Vaught was that he refused to correct alleged inaccuracies in the performance evaluation.

The Fifth Circuit has held in the education context that "'decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures,' while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (quoting *Dorsett v. Bd. of Trs. for State Colls. & Univs.*, 940 F.2d 121, 123 (5th Cir. 1991)). The court in *Dorsett* stated:

> We have neither the competency nor the resources to undertake to micromanage the administration of thousands of state educational institutions. Of all fields the federal courts "'should hesitate to invade and take over, education and faculty appointments at [the university] level are probably the least suited for federal court supervision.'"

*Dorsett*, 940 F.2d at 124 (citations omitted). We thus conclude that Vaught's alleged conduct in Starks's being excluded from departmental and university leadership and his being given undeserved negative reviews does not qualify as an adverse employment action. Vaught's alleged actions do not constitute discharges, demotions, refusals to hire, refusals to promote, or reprimands. Starks has not, therefore, pleaded a viable free-speech retaliation claim against Vaught in his official capacity. *See Juarez*, 666 F.3d at 332.

Because Starks has not pleaded an *ultra vires* claim against Vaught in his official capacity regarding the denial of a promotion to Starks and has failed to otherwise plead a viable free-speech retaliation claim against Vaught in his official capacity, the trial court erred in denying Vaught's plea to the jurisdiction because Starks's free-speech retaliation claim against him in his official capacity is barred by sovereign immunity. We sustain Appellants' second issue.

Starks argues that he should nevertheless be afforded the opportunity to re-plead. If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in the jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *Miranda*, 133 S.W.3d at 226. Hussey and Vaught argue that Starks's pleadings regarding his constitutional free-speech retaliation claim have an incurable defect because Starks suffered no qualifying adverse employment action. Liberally construing the live pleadings in Starks's favor, however, we believe that while the pleadings do not contain facts sufficient to affirmatively demonstrate the trial court's jurisdiction over Starks's claims against Hussey and Vaught in their official capacities, neither do they affirmatively demonstrate incurable defects in jurisdiction. The trial court ruled in Starks's favor, so Starks had no occasion in the trial court to ask for an opportunity to amend his pleadings to cure any defect. The proper course of action is to reverse the trial court's order as to Starks's claims against Hussey and Vaught in their official capacities and remand with instructions for the trial court to give Starks a reasonable opportunity to amend his pleadings in an attempt to properly plead these claims. *See Lazarides v. Farris*, 367 S.W.3d 788, 804 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

**Vaught's Motion for Summary Judgment**

In Appellants' third issue, Vaught contends that the trial court erred in denying his motion for summary judgment based on official immunity.

The standard of review in traditional summary judgment cases is well settled. The issue on appeal is whether the movant met its summary judgment burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002). A defendant may meet this burden by conclusively negating an essential element of the plaintiff's case or conclusively establishing all of the necessary elements of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995).

We take as true all evidence favorable to the nonmovant. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Rhone-Poulenc, Inc.*, 997 S.W.2d at 223; *Science Spectrum, Inc.*, 941 S.W.2d at 911. When the trial court does not specify the grounds upon which it ruled, the summary judgment may be affirmed if any of the grounds stated in the motion is meritorious. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005).

Vaught first argues within this issue that, regardless of the capacity in which he was sued, Starks was required to plead a facially viable claim of a constitutional violation and that Starks has failed to plead such a violation because he has failed to allege that he suffered an adverse employment action that was substantially motivated by his protected

speech. Vaught argues more specifically that Starks's performance evaluation is not an adverse employment action under free-speech retaliation law.

Government employees sued in their individual capacities may not rely on the defense of sovereign immunity. *Cloud v. McKinney*, 228 S.W.3d 326, 333 (Tex. App.—Austin 2007, no pet.). Instead, they may move for summary judgment and establish their entitlement to judgment as a matter of law by conclusively negating an essential element of the plaintiff's case or conclusively establishing all of the necessary elements of an affirmative defense, including official immunity. *See Cathey*, 900 S.W.2d at 341; *Cloud*, 228 S.W.3d at 333-34. But a summary judgment may not be granted on grounds that are not raised in the motion for summary judgment. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993).

Here, Vaught, in his individual capacity, did not move for summary judgment on the ground that he could conclusively negate an essential element of Starks's free-speech retaliation claim, *i.e.*, that he could conclusively establish that Starks suffered no adverse employment action. Thus, the trial court could not have properly granted Vaught's motion for summary judgment on this ground, and we cannot therefore hold that the trial court erred in denying Vaught's motion for summary judgment on this ground.

Vaught next argues that the trial court erred in denying his motion for summary judgment because he conclusively established that he was entitled to official immunity. Official immunity is an affirmative defense that protects government employees from personal liability. *Univ. of Houston v. Clark*, 38 S.W.3d 578, 580 (Tex. 2000). A governmental employee is entitled to official immunity: (1) for the performance of

discretionary duties; (2) within the scope of the employee's authority; (3) provided the employee acts in good faith. *Id.* Because official immunity is an affirmative defense, to obtain summary judgment on official immunity, the governmental employee must conclusively prove each element of the defense. *Id.*

We begin with whether Vaught conclusively proved that he was engaged in the performance of discretionary duties. Whether an act is discretionary or ministerial depends on whether it involves personal deliberation or simple adherence to an order. *Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 425 (Tex. 2004). "Ministerial acts are those for which 'the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment.'" *Id.* (quoting *Comm'r of the Gen. Land Office v. Smith*, 5 Tex. 471, 479 (1849)). If the public official has no choice but to obey an order, the act is ministerial. *Id.* (citing *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994)). If an action involves personal deliberation, decision, and judgment, however, it is discretionary. *Id.*

In his free-speech retaliation claim against Vaught, Starks alleges that he was given undeserved negative reviews in retaliation for speaking out regarding a matter of public concern. Starks alleges that Vaught was involved in Starks's being given undeserved negative reviews because Vaught refused to retract inaccurate portions of Starks's annual performance review.

Vaught argues that the evidence conclusively establishes that he was undertaking discretionary duties in reconsidering Starks's performance evaluation. To support his argument, Vaught points in part to his own affidavit in which he states that in 2012, the

Department of History approved the "Procedures and Criteria for Annual Merit Performance Evaluation and Review."  In the attached "true and correct copy" of the document, the detailed "Procedures" for conducting the annual performance evaluation include in pertinent part:

> Approximately six weeks after the beginning of the succeeding calendar year, the department's executive committee will evaluate the faculty with the objective of locating each member in the appropriate category of performance using a five-point scale:  4 = Superior; 3 = Excellent; 2 = Commendable; 1 = Satisfactory; 0 = Unsatisfactory.  Typically, areas of responsibility will be weighted as follows:  Research 60%, Teaching 20%, Service 20%. . . .
>
> Upon the completion of the evaluations, the department head will notify each member of the faculty in writing of the executive committee's assessment of his/her performance, including individual scores and rankings in research, teaching, and service and overall ranking and weighted composite score.  This memorandum constitutes the faculty member's annual review.  The department head will also include an assessment of each faculty member's progress in research, teaching, and service, which will vary from rank to rank. . . .
>
> Faculty members, upon indicating receipt by signing a copy of the document, will be given the opportunity to question their rankings in writing to the department head, who will consult the executive committee when *reconsidering* the evaluation.  In such a case, the department head will issue to the faculty member a final written notification explaining the decision.  Additional meetings between the department head and the faculty member may be held at either's request to discuss expectations and/or professional progress. . . .  [Emphasis added.]

The detailed "Criteria" that the department's executive committee was to use in determining the appropriate category of performance for each faculty member includes assessing such things as whether the faculty member had "a significant and productive research agenda" or a "highly productive research agenda," whether the faculty member had "demonstrated competence in the classroom" or "extraordinary teaching," etc.  It

could be reasonably inferred that the department head, in reconsidering the evaluation, also had to make such assessments and therefore performed actions involving personal deliberation, decision, and judgment. In fact, Vaught states in his affidavit that as the Head of the Department of History in the College of Liberal Arts at TAMU, a faculty member may appeal his evaluation scores to him. Vaught further states that Starks filed an appeal of his evaluation and that, "In ranking Dr. Starks's teaching efforts, I reviewed his self-evaluation and personally deliberated on the appropriate ranking. Issuing a ranking of Dr. Starks' teaching was not a ministerial duty, but involved discretion on my part to determine the most appropriate ranking."

Starks responds that performing a complete review of the performance evaluation was a ministerial duty because the review process does not leave room for the department head to pick and choose which portions of the evaluation he will reconsider. But Starks does not allege in his free-speech retaliation claim against Vaught that Vaught failed to perform a complete review of Starks's performance evaluation in retaliation for speaking out. Instead, as stated above, Starks alleges that, in retaliation for speaking out, he was given undeserved negative reviews, which happened at least in part because Vaught refused to retract inaccurate portions of Starks's annual performance review. Therefore, it is this conduct, the conduct that is alleged in Starks's free-speech retaliation claim, for which Vaught seeks to establish official immunity and for which he must therefore establish constitutes discretionary duties. In light of Vaught's evidence, we conclude that Vaught conclusively established that he was undertaking discretionary duties in reconsidering Starks's performance evaluation. *See id.*

We next turn to whether Vaught conclusively established that he was acting within the scope of his authority. Vaught states that Starks does not dispute that Vaught was acting within the scope of his authority regarding actions Vaught took concerning Starks's evaluation. But a nonmovant has no burden to respond to a summary judgment motion unless the movant conclusively establishes its cause of action or defense. *Rhone-Poulenc, Inc.*, 997 S.W.2d at 222-23. "The trial court may not grant summary judgment by default because the nonmovant did not respond to the summary judgment motion when the movant's summary judgment proof is legally insufficient." *Id.* at 223. A movant must establish its right to summary judgment on the issues expressly presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of law. *Id.* Accordingly, the burden was on Vaught to conclusively prove that he was acting within the scope of his authority.

A public official acts within the scope of his authority if he is discharging duties that are generally assigned to him. *Ballantyne*, 144 S.W.3d at 424. In the "Procedures and Criteria for Annual Merit Performance Evaluation and Review" discussed above, the department head is assigned to reconsider the evaluation. Vaught, as the head of the department, was therefore acting within the scope of his authority when he reconsidered Starks's performance evaluation. We conclude that Vaught conclusively established that he was acting within the scope of his authority in reconsidering Starks's performance evaluation.

Finally, we address whether Vaught conclusively established that he was acting in good faith in reconsidering Starks's performance evaluation. To establish the element of

good faith, a public official must conclusively prove that "a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred." *Id.* at 426. The test for good faith turns not on "'what a reasonable person *would have done*,'" but rather on "'what a reasonable [person] *could have believed*.'" *Id.* (quoting *Telthorster v. Tennell*, 92 S.W.3d 457, 465 (Tex. 2002)). The official "must prove only that a reasonably prudent [official], under similar circumstances, *might* have [acted the same way]." *Telthorster*, 92 S.W.3d at 465. If the official meets this burden, the nonmovant "must show that 'no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.'" *Chambers*, 883 S.W.2d at 657.

As stated above, the "Procedures and Criteria for Annual Merit Performance Evaluation and Review" for the Department of History provide:

> Upon the completion of the evaluations, the department head will notify each member of the faculty in writing of the executive committee's assessment of his/her performance, including individual scores and rankings in research, teaching, and service and overall ranking and weighted composite score. This memorandum constitutes the faculty member's annual review.

Accordingly, Vaught states in his affidavit that after the Executive Committee conducted their review, he would notify each faculty member in writing of the Committee's assessment of performance.

Vaught states that, in an April 12, 2014 memo, he notified Starks of the Committee's assessment of his performance for 2013. In the memo, Vaught notified Starks that the Executive Committee evaluated his 2013 performance as follows:

Research:  Unsatisfactory (vote: 5-0 + 1 abstention)
Teaching:  6 abstentions
Service:  Unsatisfactory (vote: 5-0 + 1 abstention)

**Overall evaluation:  Unsatisfactory**

Vaught then gave Starks a lengthy explanation for his evaluation based on the "Procedures and Criteria for Annual Merit Performance Evaluation and Review" for the Department of History:

> As stated in the department's revised "Procedures and Criteria for Annual Merit Performance Evaluation and Review" (2012), to earn a satisfactory ranking in research, a faculty member needs to provide tangible evidence of a significant and productive research agenda—one demonstrating progress, trajectory, and sustainability—over a three year period (pp. 3-4). Evidence of such an agenda consists of single-authored research monographs, edited volumes of scholarly essays, peer-reviewed articles in disciplinary or area-specific journals, essays published in edited volumes, significant translations, external grants and fellowships, and article or book awards (pp. 3-4).  The Executive Committee found that your research productivity over the three year period 2011-2013 does not meet the criteria for a satisfactory ranking.  On your 2013 Annual Report Form,[5] you cited only a reprinted scholarly essay first published in 2003.  Note, however, that our annual review guidelines deem reprinted articles "unlikely to be considered for merit" or evidence of a significant and productive research agenda.  Under "status of long-term research projects," you mention three manuscripts in various stages of development, but the Executive Committee, in accordance with the guidelines, did not consider works in progress as criteria for making satisfactory progress.  The Executive Committee also notes that with regard to research, the pertinent sections on your previous two annual review forms (2011 and 2012) are entirely blank.

[5] The "Procedures and Criteria for Annual Merit Performance Evaluation and Review" provide:

> On or about December 1, the department head will distribute blank "Faculty Member's Annual Report" forms … along with copies of this document.  Each member of the faculty will be required to submit the completed report by January 20 of the succeeding year.  The "Faculty Member's Annual Report" will detail the academic activities of a calendar year (January 1 through December 31) and will serve as the primary basis for evaluating a faculty member's professional progress.  It is incumbent upon each faculty member to make the best case for his/her accomplishments on the form and to state, with clarity and purpose, his/her short and long term goals for professional development (teaching, research, and service) in the section at the end of the form.

> No publications, grants, or awards in the previous three years yields no tangible evidence of productivity—hence, the unsatisfactory ranking in research.
>
> Because of your lack of any professional service over the three-year period, the Executive Committee, following the guidelines, also ranked you unsatisfactory in service. All six members abstained from evaluating your teaching due to your remarks under "courses taught" on the Annual Report Form. Note, however, that an overall unsatisfactory evaluation "results from a faculty member's failure to meet departmental standards in one or more of the three areas of responsibility" (p. 3).

Vaught states in his affidavit that he "approved the Executive Committee's rankings and assessment."

The "Procedures and Criteria for Annual Merit Performance Evaluation and Review" for the Department of History provide, "Faculty members, upon indicating receipt by signing a copy of the document, will be given the opportunity to question their rankings in writing to the department head, who will consult the executive committee when reconsidering the evaluation." Vaught states in his affidavit that Starks filed an appeal of the evaluation. Vaught then explains:

> Because the six members of the Executive Committee abstained from giving Dr. Starks a score for teaching, I reviewed and evaluated the teaching contributions listed by Dr. Starks in his Annual Report. There are five categories of scores that can be given in the area of teaching: superior, excellent, commendable, satisfactory and unsatisfactory. . . . As stated in the Department criteria, "A satisfactory ranking reflects a faculty member having met departmental standards in all three areas of responsibility." Based on my review of Dr. Starks' Annual Report, I believed this ranking accurately reflected his teaching efforts for the 2013 calendar year. The Executive Committee reviewed this ranking and concurred.
>
> . . . .
>
> . . . Teaching efforts that demonstrate a "superior" ranking would include receipt of a University-level teaching award. . . . An "excellent"

ranking is awarded to those faculty members who contribute "substantially to the graduate program, as evidenced by chairing two or more committees *and* serving on more than four others; or contributing substantially to the undergraduate program with the award of three or more "commendable" teaching accomplishments. . . . To demonstrate efforts deserving of a "commendable" ranking, a faculty member must demonstrate "extra engagement in the classroom . . . beyond meeting basic expectations." . . .

. . . The information produced by Dr. Starks in his Annual Report showed that he taught: three courses in the Spring 2013 semester, one course in the Summer 2013 semester and two courses in the Fall 2013 semester. . . . Dr. Starks did not teach any independent study. He listed "none" under "Contributions to Undergraduate Education." He stated that he was a committee member for one Ph.D candidate. Therefore, his efforts, as reflected in the Report that he prepared and submitted for review, did not . . . reflect the level needed for a ranking of "superior," "excellent" or "commendable" effort.

Starks asserts that the foregoing evidence does not establish that Vaught was acting in good faith because Vaught swore that he reviewed only Starks's evaluation in teaching. Starks argues that because he questioned the entirety of his evaluation, the "Procedures and Criteria for Annual Merit Performance Evaluation and Review" for the Department of History required Vaught to reconsider the entirety of his evaluation. Starks thus contends that because Vaught failed to follow the procedures and instead reviewed only a portion of Starks's evaluation, a fact issue exists as to whether Vaught acted in good faith. We disagree.

Vaught does not state in his affidavit that he reconsidered only Starks's evaluation in teaching. Rather, Vaught states, "I approved the Executive Committee's rankings and assessment." When Starks appealed, however, Vaught reviewed Starks's evaluation in teaching because the six members of the Executive Committee abstained from giving Starks a score for teaching. Furthermore, Starks's own evidence shows that Vaught did

not reconsider only Starks's evaluation in teaching.  Attached to Starks's response to Appellants' motion for summary judgment and plea to the jurisdiction is a memo from Vaught to Starks detailing Vaught's "Reconsideration of [Starks's] 2013 Annual Review." Along with explaining why Starks earned a ranking of satisfactory in teaching, Vaught explained why he denied Starks's appeal of his unsatisfactory ranking in service and research.  The explanations are based on the "Procedures and Criteria for Annual Merit Performance Evaluation and Review" for the Department of History.

Based on the foregoing, we conclude that Vaught met his burden of conclusively proving that a reasonably prudent official, under the same or similar circumstances, could have believed that Vaught's conduct was justified based on the information he possessed when the conduct occurred.  Vaught therefore conclusively established that he was acting in good faith in reconsidering Starks's performance evaluation.  *See Ballantyne*, 144 S.W.3d at 426.  Moreover, because we have concluded that Vaught met his burden of conclusively establishing all of the necessary elements of his affirmative defense of official immunity, we hold that the trial court erred in denying Vaught's motion for summary judgment on official immunity.  We sustain Appellants' third issue.

**Conclusion**

We reverse that portion of the trial court's order denying Vaught's motion for summary judgment and render summary judgment in favor of Vaught in his individual capacity.  We reverse that portion of the trial court's order denying Hussey's and Vaught's plea to the jurisdiction and remand that portion of the case to the trial court with instructions for the trial court to give Starks a reasonable opportunity to amend his

pleadings in an attempt to properly plead those claims.  We affirm the remaining portion of the trial court's order.

REX D. DAVIS
Justice

Before Chief Justice Gray,
  Justice Davis, and
  Justice Scoggins
Affirmed in part/Reversed in part
Opinion delivered and filed July 27, 2016
[CV06]

