

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00197-CV

Francisco **SANCHEZ**, Jr.,
Appellant

v.

**TEXAS A&M UNIVERSITY-SAN ANTONIO**,
Appellee

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-CI-06141
Honorable Karen H. Pozza, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:        Karen Angelini, Justice
                Luz Elena D. Chapa, Justice
                Irene Rios, Justice

Delivered and Filed: December 12, 2018

AFFIRMED

Francisco Sanchez, Jr. appeals the trial court's judgment dismissing his employment discrimination claims against Texas A&M University-San Antonio (the University). Sanchez argues the trial court erred by granting the University's combined plea to the jurisdiction, traditional motion for summary judgment, and no-evidence motion for summary judgment. Because Sanchez did not timely file his charge of discrimination or demonstrate the University's reason for its employment decisions was a pretext, we affirm the trial court's judgment.

## BACKGROUND

The University hired Sanchez in 2001 to manage student enrollment. In 2009, Sanchez was promoted to Assistant Vice President (AVP) for Enrollment Management. At the time, the University admitted only college juniors and seniors. The University decided to pursue "downward expansion" and to start admitting freshmen and sophomores. The University also sought accreditation from the Southern Association of Colleges and Schools.

To accomplish these goals, the University identified Sanchez as the most qualified candidate to lead a project of implementing a resource planning software system known as "Banner," which was used by other universities in the A&M University System. The parties refer to the implementation of Banner as the "Banner project" and "Banner Implementation Project." Sanchez was notified by a June 25, 2012 letter that he was being transferred to work on the project. The letter, sent from then-President Dr. Maria Hernandez Ferrier, stated:

> It is with great enthusiasm that I offer you the position of Special Assistant for Finance and Administration to serve as a critical member of the Banner implementation team. This move will be considered a transfer . . . effective . . . Monday July 2, 2012. Your salary will increase effective July 1, 2012 from $95,000 to $100,000 for work completed during the Banner Implementation Project. Your salary will be reduced $5,000 at the end of the Banner Implementation Project with an expected end date of August 31, 2014.

Sanchez was led to believe that he either still held his AVP position or that the position would be held open for him until the end of the Banner Project on August 31, 2014.

In April 2013, the University hired Dr. Melissa Mahan to serve as the new Vice President of Student Affairs. When she was hired, Dr. Mahan believed she was tasked with building her own team and implementing a structure for student enrollment, engagement, and success, although the University never expressly directed her to do so. On May 2, 2013, the University posted a job opening for an AVP for Enrollment. Later that month, Sanchez complained to his supervisor that he felt the University's decision to post a job opening for the AVP for Enrollment was wrong and

discriminatory. Sanchez applied for the position, but he was not interviewed. Instead, in September 2013, Sanchez discovered the University had hired Dr. Eric Cooper.

On May 1, 2014, Sanchez was informed that his current position would be eliminated on August 31, 2014, which was the expected end date stated in Dr. Ferrier's June 25, 2012 letter. The University sought to terminate the position in accordance with a Texas A&M University System regulation outlining the procedure for implementing a reduction in force (or RIF). The RIF targeted two positions for elimination: Sanchez's position and "the Banner Implementation Team Member" position, with an effective end date of August 31, 2014. In lieu of termination, the University offered Sanchez a position of ITS Project Manager with a salary of $30,000 below his current salary. Sanchez accepted the transfer under protest.

On September 29, 2014, Sanchez filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). In the EEOC charge of discrimination, Sanchez complained about both the hiring of Dr. Cooper and the elimination of his position on the Banner project. Sanchez stated the employment actions were based on retaliation and his national origin. Sanchez received his right to sue letter from the EEOC on February 23, 2015.

On April 14, 2015, Sanchez filed suit. The University filed an answer, as well as its combined plea to the jurisdiction, traditional motion for summary judgment, and no-evidence motion for summary judgment. The University argued Sanchez failed to timely file his EEOC charge and failed to timely bring suit. The University also challenged the elements of Sanchez's employment claims and argued there was no evidence showing the RIF was a pretext. After a hearing, the trial court signed a final judgment granting the combined plea and motion without stating the grounds. Sanchez timely filed a notice of appeal.

**STANDARDS OF REVIEW**

**A. Plea to the Jurisdiction**

"In Texas, sovereign immunity deprives a trial court of subject matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the state consents to suit." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). A party's "statutory cause of action against a governmental entity" is jurisdictionally barred unless it complies with the statutory prerequisites. *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 512 (Tex. 2012). A party may challenge the trial court's subject matter jurisdiction by filing a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225-26. "Whether a court has subject matter jurisdiction is a question of law." *Id.* at 226. "[W]hether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is also a question of law." *Id.*

"However, in some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact." *Id.* If a plea to the jurisdiction challenges the existence of jurisdictional facts that also implicate the merits of a case, a court considers "relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *Id.* "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227-28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228. "When reviewing a plea to the jurisdiction in which the pleading requirement has been met and evidence has been submitted to support the plea that implicates the merits of the case, we take as true all evidence favorable to the nonmovant." *Id.* "We indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id.*

**B. Motions for Summary Judgment**

We review the trial court's grant of a summary judgment de novo, regardless of whether the summary judgment motion was a traditional motion or a no-evidence motion. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). In reviewing a summary judgment, we take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *Knott*, 128 S.W.3d at 215.

We review a no-evidence summary judgment using a legal sufficiency standard. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *see also* TEX. R. CIV. P. 166a(i). "When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004); *accord Strandberg v. Spectrum Office Bldg.*, 293 S.W.3d 736, 738 (Tex. App.—San Antonio 2009, no pet.). If the nonmovant's summary judgment evidence contains "more than a scintilla of probative evidence to raise a genuine issue of material fact," the trial court may not properly grant the no-evidence motion. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

DISCUSSION

At oral argument, Sanchez explained the nature of his employment claims against the University that centered on two series of actions taken by the University. The first series of actions begins with the posting of the AVP for Enrollment position and includes the University's actions through the hiring of Dr. Cooper for the position. The second series of actions begins with the May 1, 2014 notification that Sanchez's temporary position would be eliminated on August 31, 2014,

and included the University's actions through Sanchez's involuntary transfer to the position of ITS Project Manager. Sanchez characterizes the two series of actions as each resulting in a forced demotion. For clarity, we refer to the first alleged demotion as the "AVP demotion" and the second as the "Banner project demotion."

## EEOC CHARGE

Sanchez argues he filed his EEOC charge within 180 days of the University's adverse employment actions. *See Tex. A&M Univ. v. Starks*, 500 S.W.3d 560, 568 (Tex. App.—Waco 2016, no pet.) (stating an employment claim is jurisdictionally barred if the charge of discrimination is not filed within 180 days of the adverse employment action). The jurisdictional facts, which do not implicate the merits of Sanchez's claims, are undisputed. Sanchez filed his EEOC charge on September 29, 2014. The parties do not dispute the EEOC charge was filed more than 180 days after the AVP demotion, which culminated a year earlier when Sanchez discovered the University had hired Dr. Cooper. The parties also do not dispute the EEOC charge was timely filed less than 180 days after the Banner project demotion.

Instead, Sanchez argues the EEOC charge was timely filed as to both demotions under the "continuing violation" doctrine. "When a charge is timely filed as to one act of discrimination, the doctrine of continuing violation expands the scope of those discriminatory events that are actionable, as long as one of the events occurs within the 180-day period." *Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30, 41 (Tex. App.—Austin 1998, pet. denied). "This doctrine applies when an unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Id.* at 41-42.

"The core idea of the continuing-violation doctrine is that equitable considerations may require that the filing period not begin until acts supportive of a civil rights action are, or should be, apparent to a reasonably prudent person in the same or a similar position." *Id.* at 42. "The focus

is on what event should, in fairness and logic, have alerted the average layperson to act to protect his or her rights." *Id.* Consequently, the continuing violation doctrine may apply to hostile work environment claims and constructive discharge cases. *See, e.g.*, *Cooper-Day v. RME Petroleum Co.*, 121 S.W.3d 78, 86 (Tex. App.—Fort Worth 2003, pet. denied). But the doctrine generally does not apply to discrete acts such as "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)).

We hold the continuing violation doctrine does not apply to Sanchez's claims. Sanchez claimed the AVP demotion began with the job posting for the AVP for Enrollment. When he learned about the posting, Sanchez promptly complained about discrimination to the University. After making this internal complaint, Sanchez was not interviewed for the AVP for Enrollment position and the University hired Dr. Cooper, who was not in any applicable protected class. At the time Sanchez discovered Dr. Cooper was hired, the alleged demotion and the discriminatory basis therefor were, or should have been, apparent to a reasonably prudent person in the same or a similar position. *See Wal-Mart Stores, Inc.*, 979 S.W.2d at 41.

Even accepting as true Sanchez's characterization of the University's employment decision as a demotion, the continuing violation doctrine generally does not apply to demotions because demotions are generally discrete acts. *Olivarez v. Univ. of Tex. at Austin*, No. 03-05-00781-CV, 2009 WL 1423929, at *2 (Tex. App.—Austin May 21, 2009, no pet.) (mem. op.) (stating a "demotion is a discrete adverse action that cannot be lumped together with the day-to-day patter[n] of . . . harassment and cannot be saved by the continuing-violation doctrine.") (internal quotation marks omitted). Because the continuing violation doctrine does not apply, Sanchez's EEOC charge was untimely as to the AVP demotion. We therefore hold the trial court did not err by dismissing Sanchez's claims to the extent they are based on the AVP demotion. *See Starks*, 500 S.W.3d at 568.

**REDUCTION IN FORCE (RIF)**

To the extent his claims are based on the Banner project demotion, Sanchez argues he timely brought suit after receiving his right to sue letter and presented sufficient evidence to raise a fact issue regarding the merits of his claims. When, as here, a plaintiff cannot prove discrimination through direct evidence, courts apply the burden-shifting mechanism described in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802-05 (1973); *accord Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). A plaintiff raises a presumption of discrimination if he meets the initial burden of presenting a prima facie case of discrimination. *Garcia*, 372 S.W.3d at 634. Once the plaintiff presents a prima facie case, the burden shifts to the employer to articulate a legitimate non-discriminatory reason for its treatment of the employee. *McDonnell Douglas*, 411 U.S. at 802; *Donaldson v. Tex. Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 437 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). The burden then shifts back to the plaintiff to produce evidence showing the legitimate non-discriminatory reason is actually a pretext. *See McDonnell Douglas*, 411 U.S. at 802; *Donaldson*, 495 S.W.3d at 438.

Assuming Sanchez timely brought suit and presented a prima facie case that the Banner project demotion was discriminatory and retaliatory, the University articulated a legitimate non-discriminatory reason for the alleged demotion: the reduction in force (RIF). *See McDonnell Douglas*, 411 U.S. at 802; *Donaldson*, 495 S.W.3d at 438. Human Resources Director Karen Collins swore in her affidavit, "[T]he RIF was needed because the Banner Implementation Project was put on hold and there was no work for Mr. Sanchez and [the other banner project employee]." Collins further swore the RIF was initiated "per policy." Her affidavit also stated, "The RIF was not ultimately implemented because both affected employees accepted other positions within the University." Because the University articulated a legitimate non-discriminatory reason for the Banner project demotion, Sanchez had the burden to produce some evidence showing the RIF was

a pretext for discrimination or retaliation. *See McDonnell Douglas*, 411 U.S. at 802; *Donaldson*, 495 S.W.3d at 438. To raise a fact issue regarding pretext, the nonmovant must present evidence indicating that the non-discriminatory reason given by the employer is false or not credible, and that the real reason for the employment action was unlawful discrimination. *See Donaldson*, 495 S.W.3d at 438.

Sanchez argues the RIF was a pretext for two reasons. First, he argues there was no actual reduction in force, and the University actually created a new position for him. However, Texas A&M University System Regulation 33.99.15, Reduction in Force for Nonfaculty Employees, provides the "lack of funds, lack of work, [or] reorganization . . . may require [an] RIF." The regulation also states that an RIF need not be in "the form of elimination of jobs" and may include a "reduction in salary." Simply because there was no actual elimination of jobs does not show the RIF was a pretext. As Collins's affidavit explained, "The RIF was not ultimately implemented because both affected employees accepted other positions within the University." Although Sanchez argues the University actually created a new position for him, the creation of another position in a different department does not violate the RIF regulation. Instead, the RIF regulation provides, "Every reasonable effort will be made by human resources offices to place dismissed employees in comparable positions for which they are qualified." Sanchez does not argue that the University failed to comply with the RIF regulation in a way that raises a fact issue that the RIF was a pretext.

Second, Sanchez argues that, because the Banner project was merely delayed and not eliminated, the University did not need to eliminate the Banner project positions. Sanchez cites to evidence showing that after he was demoted, the University resumed the Banner project, completed the project two years after his demotion, and even had him work on the project. The delay in the Banner project that Sanchez describes is consistent with the University's explanation

of the need for the RIF because there was no work for Sanchez to do on the Banner project for some time after August 31, 2014. The evidence Sanchez cites establishes he resumed working on the Banner project a year after the Banner project demotion. Thus, Sanchez's evidence is consistent with the reason given for the RIF; at the time of the Banner project demotion, there was no work for Sanchez to do on the Banner project for over a year.

Neither of Sanchez's arguments regarding pretext demonstrate how the evidence raises a fact issue that the non-discriminatory reason given by the University is false or not credible, and that the real reason for the employment action was unlawful discrimination. *See Donaldson*, 495 S.W.3d at 438. We hold Sanchez has failed to produce evidence showing the University's legitimate non-discriminatory reason for the Banner project demotion was actually a pretext for discrimination or retaliation. *See McDonnell Douglas*, 411 U.S. at 802; *Donaldson*, 495 S.W.3d at 438. We therefore conclude the trial court did not err by dismissing Sanchez's claims to the extent they were based on the Banner project demotion.

## CONCLUSION

We affirm the trial court's judgment.

Luz Elena D. Chapa, Justice