

IN THE
TENTH COURT OF APPEALS

No. 10-18-00038-CV

WALTER ZAWISLAK, M.D.,

Appellant

v.

THE TEXAS A&M UNIVERSITY HEALTH SCIENCE CENTER,

Appellee

From the 85th District Court
Brazos County, Texas
Trial Court No. 16-001998-CV-85

## MEMORANDUM OPINION

In three issues, Walter Zawislak, M.D., (Zawislak) appeals from the trial court's

judgment granting Texas A&M University System Health Science Center's (TAMHSC)

plea to the jurisdiction and dismissing with prejudice all the causes of action, claims, and

relief sought by Zawislak against TAMHSC in the underlying suit. We will affirm.

### BACKGROUND

The Texas Medical Board (the Board) filed a complaint against Zawislak with the

State Office of Administrative Hearings. Following a hearing regarding the complaint,

the administrative law judge (ALJ) issued a "Proposal for Decision" containing findings of fact and conclusions of law. Thereafter, the Board issued a "Final Order" adopting the ALJ's findings of fact and conclusions of law, including conclusions that Zawislak had committed negligence in his performance of several medical services.

The Board reprimanded Zawislak in its Final Order. The Board also ordered, among other things, that Zawislak contact TAMHSC to schedule a Knowledge, Skills, Training, Assessment, and Research (KSTAR) assessment. The Board stated in its Final Order that the assessment should be of Zawislak and his practice of medicine and should determine whether Zawislak should undergo an education plan. The Board further ordered that if TAMHSC recommended an education plan for Zawislak, then Zawislak must complete it.

The ensuing relationship between Zawislak and TAMHSC led to the underlying lawsuit. Zawislak originally sued TAMHSC for defamation, but in his amended petition, Zawislak dropped his defamation claim and instead asserted causes of action against TAMHSC for negligence under the Texas Tort Claims Act (TTCA) and for breach of contract. More specifically, Zawislak alleged as follows in his live petition at the time the trial court granted TAMHSC's plea to the jurisdiction: Zawislak entered into an "Agreement for Professional Services" (the Agreement) with TAMHSC for TAMHSC to conduct a KSTAR assessment for him. Under the Agreement, TAMHSC was to perform the following duties in conducting Zawislak's KSTAR assessment:

- provide five medical records that had been de-identified that Zawislak would review and provide formal feedback as to the care rendered;

- provide the opportunity to assess four patient scenarios using standardized patients and conduct a formal physical assessment, document findings, and be prepared to discuss the findings and rationale for such;

- provide four National Board of Medical Examiners Tests with Subject Examination by TAMHSC;

- check references and obtain feedback on past and present performance applicable to the assessment;

- provide a formal written evaluation of Zawislak at the conclusion of the assessment;

- provide micro-cognitive computerized testing through TAMHSC; and

- provide ECG 12-lead and rhythm strip analysis through TAMHSC.

In turn, Zawislak consented in the Agreement to:

- complete all necessary paperwork, including authorization to contact references that may have knowledge of his medical practice;

- fully participate in the aforementioned "activities";

- compensate TAMHSC pursuant to the Agreement;

- be present at TAMHSC as scheduled; and

- allow KSTAR follow-up at one- and five-year post-assessment.

Zawislak alleged that TAMHSC, however, performed its duties under the Agreement negligently. Zawislak asserted that TAMHSC breached its duty of care to him because TAMHSC failed to adhere to the Agreement's "STANDARD OF CARE" section, which states: "TAMHSC warrants that Services shall be performed by personnel possessing competency consistent with applicable industry standards."

Zawislak alleged that his KSTAR assessment consisted of a rigorous two-day evaluation, which TAMHSC employee Dr. Steele (Steele) oversaw. Before the assessment

began, TAMHSC interviewed Zawislak to determine his specific area of medical practice, but after the assessment started, Zawislak immediately noticed that he was not being tested in his correct field of medicine. Zawislak is an emergency medicine (EM) physician, and he was being administered an ambulatory care medicine (ACM) exam. Zawislak immediately notified the proctor of the issue. Zawislak also emailed Steele after the exam, requesting that Steele review the ACM exam with the faculty of the EM department of TAMHSC's medical school to determine if they thought that the ACM exam was "a good indicator of the working knowledge of EM." Steele refused to do so.

Zawislak alleged that he "suffered direct and obvious discomfort and mental anguish . . . from the duress, stress, and frustration [of] improperly testing [him] outside his field of medicine" during the KSTAR assessment. Zawislak further asserted that TAMHSC, having full knowledge of Zawislak's discomfort, "falsely and negligently reported" the following written statements about him:

- Zawislak was distressed to the point that he appeared to be distracted, which can have an impact on patient safety, and

- Zawislak should have a forensic psychiatric exam to define the underlying causes of his behaviors and the sources of his distress more clearly, which would allow him to get treatment to help ease his distress and help him communicate and behave in a more professional way.

Zawislak alleged that TAMHSC further breached its duty of care to him because the TAMHSC employee who was responsible for administering the Electrocardiogram and Rhythm Strip Interpretation Test (ERSIT) of the KSTAR assessment had no expertise, training, or adequate supervision to determine whether the materials that she used for the assessment were suitable for testing purposes. During the administration of the

ERSIT, Zawislak challenged the integrity of the exam by informing the TAMHSC employee that about half of the electrocardiograms and several of the rhythm strips had artifacts that would cause interpretation errors. The employee reproduced the electrocardiograms and rhythm strips multiple times. After finally using a different printer, the reproductions were of high resolution and did not have the previously identified artifacts. Zawislak thereafter received a perfect ERSIT score.

Zawislak finally alleged that TAMHSC employees negligently used the KSTAR assessment materials to evaluate his performance and that the condition of the KSTAR assessment materials were inadequate to evaluate him. According to Zawislak, TAMHSC failed to provide the opportunity to assess four patient scenarios using standardized patients, as expressly promised in the Agreement. Zawislak asserted that instead, TAMHSC's use of the KSTAR patient scenarios required Zawislak to ignore recognized standards of care for EM physicians. Zawislak alleged that additionally, TAMHSC failed to provide adequate micro-cognitive computerized testing, as expressly promised in the Agreement, because TAMHSC's computer frequently malfunctioned during the testing.

Zawislak alleged that TAMHSC's "use or condition of its KSTAR assessment and evaluation," as described above, caused Zawislak "personal injuries that resulted in direct and obvious mental anguish, duress, stress, and frustration from improperly testing [Zawislak] outside his field of medicine." Zawislak's "mental anguish, stress, and frustration [were] further exacerbated" because his medical career and medical license were placed in jeopardy. Zawislak alleged that he should therefore be entitled to the

following damages: mental anguish, medical expenses, loss of services, and loss of past and future earning capacity.

Along with the foregoing negligence allegations, Zawislak also alleged that TAMHSC breached a "valid, enforceable contract." More specifically, Zawislak claimed that TAMHSC breached the Agreement because it failed to provide four National Board of Medical Examiners Tests with Subject Examination; failed to test Zawislak in his correct field of medicine; used a faulty case scenario to test an EM physician; failed to provide the opportunity to assess four patient scenarios using standardized patients and, instead, provided KSTAR patient scenarios that required Zawislak to ignore recognized standards of care for EM physicians; allowed Zawislak's KSTAR assessment to be performed by Steele and other TAMHSC employees who lacked professional medical competency or expertise in EM; failed to provide five medical records that had been de-identified for Zawislak to review and to provide formal feedback as to the care rendered; failed to provide a competent assessment of Zawislak's evaluation of patient medical charts; and failed to provide adequate micro-cognitive computerized testing because TAMHSC's computer frequently malfunctioned during testing. Zawislak then alleged that TAMHSC's breach of contract caused him injury, resulting in general and special damages including loss of credit or reputation in the medical community, the cost/expenses that Zawislak paid for the Agreement, loss of Zawislak's earning capacity, and loss of profits from Zawislak's medical/professional practice.

TAMHSC answered Zawislak's pleadings by denying Zawislak's allegations. TAMHSC's first amended answer, its live pleading at the time the trial court rendered judgment in this case, also provided:

## III.
## SOVEREIGN IMMUNITY

Defendant TAMHSC is a state governmental unit pursuant to Tex. Ed. Code § 89.002 and Tex. Civ. Prac. & Rem. Code § 101.001(3) as a matter of law and has full sovereign immunity both from suit and from liability, save only to the extent of the partial waiver of same given by the [TTCA] (Chapter 101 of the Texas Civil Practice & Remedies Code), and hereby pleads and asserts its claim to and defense of sovereign immunity, and the limits, exemptions, and exclusions of the [TTCA].

## IV.
## PLEA TO THE JURISDICTION

Defendant TAMHSC is entitled to Sovereign Immunity from suit and from liability and the Plaintiff [Zawislak]'s petition fails to allege adequate grounds to establish a waiver of such Sovereign Immunity; therefore, the Court is without jurisdiction to hear this cause of action and the same should be dismissed with prejudice. . . .

. . . .

## VII.
## ADDITIONAL AFFIRMATIVE DEFENSES

In addition to the foregoing, Defendant [TAMHSC] asserts the following affirmative defenses to Plaintiff [Zawislak]'s claims:

. . . .

5.  Defendant [TAMHSC] asserts any and all immunities that may apply to Plaintiff [Zawislak]'s suit, including sovereign immunity to liability and to suit, official and qualified immunity, or any other immunity that may now or later apply to the case and claims.

TAMHSC also filed a separate document containing a plea to the jurisdiction and, alternatively, motions for summary judgment. In the plea to the jurisdiction, TAMHSC asserted that the trial court lacked subject matter jurisdiction because sovereign immunity had not been waived as to either Zawislak's negligence or breach-of-contract claims. TAMHSC also specifically asserted that Zawislak had failed to allege a claim that falls within the limited waiver of sovereign immunity under the TTCA because Zawislak had failed to allege that there had been use of tangible personal property under section 101.021(2) of the Civil Practice and Remedies Code. TAMHSC then argued alternatively that it was entitled to traditional and/or no-evidence summary judgment on the grounds that it was entitled to sovereign immunity because there had been no use of tangible personal property under the TTCA and because the State had not waived sovereign immunity for breach of contract. The trial court thereafter granted TAMHSC's plea to the jurisdiction and dismissed with prejudice all the causes of action, claims, and relief sought by Zawislak against TAMHSC. This appeal ensued.

## WAIVER FOR FAILURE TO PLEAD

In his first issue, Zawislak contends that TAMHSC waived its entitlement to "sovereign immunity pursuant to the [TTCA], Tex. Civ. Prac. & Rem. Code § 101.021(2), because there has been no use of tangible personal property when [TAMHSC] failed to raise it as an affirmative defense in [TAMHSC's first amended answer]." We disagree.

Sovereign immunity includes two distinct principles: immunity from suit and immunity from liability. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Immunity from liability protects the State or certain governmental units from

judgment even if the Legislature has consented to suit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (per curiam). Like other affirmative defenses to liability, it must be pleaded or else it is waived. *Id.* (citing *Davis v. City of San Antonio*, 752 S.W.2d 518, 519-20 (Tex. 1988)); *see* TEX. R. CIV. P. 94. Immunity from liability does not affect a trial court's jurisdiction to hear a case. *Jones*, 8 S.W.3d at 638.

In contrast, immunity from suit bars an action against the State or certain governmental units unless the Legislature has consented to suit. *Id.*; *see Tex. Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011). Immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Jones*, 8 S.W.3d at 638-39. This is true even in the context of the TTCA, which creates a unique statutory scheme in which immunity from suit and immunity from liability are co-extensive. *See Miranda*, 133 S.W.3d at 224; *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a) ("Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.").

Here, TAMHSC properly challenged the trial court's jurisdiction to hear the underlying case by asserting its immunity from suit in a plea to the jurisdiction. *See Jones*, 8 S.W.3d at 638-39. TAMHSC also specifically raised in its plea to the jurisdiction its argument that it was entitled to sovereign immunity because Zawislak had failed to allege that there had been use of tangible personal property under section 101.021(2) of the Civil Practice and Remedies Code. Thus, TAMHSC did not waive its entitlement to immunity from suit for failure to properly plead it. *See id.* Furthermore, we need not address Zawislak's argument that TAMHSC waived its entitlement to immunity from

liability.  The trial court granted TAMHSC's plea to the jurisdiction and therefore did not rule on TAMHSC's motions for summary judgment, including the issue of whether TAMHSC was entitled to immunity from liability.  We therefore overrule Zawislak's first issue.

## PLEA TO THE JURISDICTION

In his third issue, Zawislak challenges the trial court's granting of TAMHSC's plea to the jurisdiction as to his negligence claim.[1]

> We review a trial court's ruling on a plea to the jurisdiction de novo. . . . *Miranda*, 133 S.W.3d [at] 226. . . .  When a party has filed a plea to the jurisdiction challenging the pleadings, a reviewing court must construe the pleadings liberally in favor of the pleader and look to the pleader's intent. *See id.*  If the facts alleged affirmatively demonstrate the trial court's jurisdiction to hear the cause, the plea to the jurisdiction must be denied. *See id.*  If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate incurable defects in the jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *See id.*  If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *See id.* at 227.

> If in its plea to the jurisdiction a party challenges the existence of jurisdictional facts, the reviewing court considers relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, as the trial court is required to do. *See id.*  If the evidence creates a fact question regarding the jurisdictional issue, then the plea to the jurisdiction must be denied. *See id.* at 227-28.  However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, then the court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.  In ruling on a plea to the jurisdiction, a court does not consider the merits of the parties' claims. *See id.* at 226-28; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

---

[1] Zawislak did not raise an issue or make any arguments in his briefing about the trial court's granting of TAMHSC's plea to the jurisdiction as to Zawislak's breach-of-contract claim.  Accordingly, we need not address the issue.

*Tex. A & M Univ. v. Starks*, 500 S.W.3d 560, 567 (Tex. App.—Waco 2016, no pet.) (quoting

*Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 321 S.W.3d 1, 3-4 (Tex. App.—Houston

[14th Dist.] 2008) (mem. op.), *aff'd*, 320 S.W.3d 829 (Tex. 2010)).

Sovereign immunity from suit, as stated above, deprives a trial court of jurisdiction over a lawsuit in which a party has sued the State or certain governmental units unless the Legislature has consented to suit. *Sawyer Tr.*, 354 S.W.3d at 388; *Miranda*, 133 S.W.3d at 224. TAMHSC is one such governmental unit that enjoys sovereign immunity from suit absent legislative consent. *See Univ. of Tex. Med. Branch at Galveston v. Kai Hui Qi*, 402 S.W.3d 374, 380 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The TTCA provides a limited waiver of sovereign immunity. *Miranda*, 133 S.W.3d at 224; *see* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001-.109. Sovereign immunity from suit is waived to the extent of liability under the TTCA. TEX. CIV. PRAC. & REM. CODE ANN. § 101.025(a). In section 101.021(2) of the Civil Practice and Remedies Code, the TTCA provides that a governmental unit is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id.* § 101.021(2).

In the TTCA context, "tangible personal property refers to something that has a corporeal, concrete, and palpable existence." *Univ. of Tex. Med. Branch at Galveston v. York*, 871 S.W.2d 175, 178 (Tex. 1994). Furthermore, in the TTCA context, a "condition" has been defined as "'either an intentional or an inadvertent state of being.'" *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 388 (Tex. 2016) (quoting *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 49 (Tex. 2015) (quoting *Sparkman v. Maxwell*, 519 S.W.2d 852, 858 (Tex. 1975))).

> To state a "condition" claim under the [TTCA], there must be an allegation of "defective or inadequate property." *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 32 (Tex. 1983); *see* [*Dallas County*] *v. Posey*, 290 S.W.3d 869, 872 (Tex. 2009) (per curiam) ("For a defective condition to be the basis for complaint, the defect must pose a hazard in the intended and ordinary use of the property.").

*Sampson*, 500 S.W.3d at 388 (footnote omitted). Additionally, in the TTCA context, the term "use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Id.* (quoting *Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001) (quoting *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989))).

> As with negligent activity claims under common law, to state a "use" of tangible personal property claim under the [TTCA], the injury must be *contemporaneous* with the use of the tangible personal property—"[u]sing that property must have actually caused the injury." [*Miller*, 51 S.W.3d at 588.] Allegations of mere non-use of property cannot support a "use" claim under the [TTCA]. *See, e.g.*, [*Tex. Nat. Res. Conservation Comm'n v.*] *White*, 46 S.W.3d [864,] 869-70 [(Tex. 2001)] (concluding that the failure to use a pump to dissipate gasoline vapors did not support a claim for negligent use of tangible personal property). Additionally, . . . a governmental unit "does not 'use' tangible personal property . . . within the meaning of section 101.021(2) by merely providing, furnishing, or allowing . . . access to it." *Rusk State Hosp.* [*v. Black*], 392 S.W.3d [88,] 98 [(Tex. 2012)]. However, non-use and furnishing access are distinguishable from situations in which a governmental unit "provided equipment that lacked an integral safety component." *See* [*Tex. A & M Univ. v.*] *Bishop*, 156 S.W.3d [580,] 584 [(Tex. 2005)] (explaining that providing equipment that lacks "an integral safety component" represents "the outer bounds of what we have defined as use of tangible personal property," and we "appl[y] [our precedent] narrowly only when an integral safety component is entirely lacking rather than merely inadequate").

*Sampson*, 500 S.W.3d at 388-89.

For immunity to be waived under section 101.021(2), the plaintiff's injuries must also have been proximately caused by the condition or use of the tangible personal

property.  *City of Dallas v. Sanchez*, 494 S.W.3d 722, 726 (Tex. 2016) (per curiam) (citing

*Dall. Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342-43 (Tex.

1998)).

> Proximate cause requires both "cause in fact and foreseeability."  *Ryder*
> [*Integrated Logistics, Inc. v. Fayette County*], 453 S.W.3d [922,] 929 [(Tex. 2015)
> (per curiam)].  For a condition of property to be a cause in fact, the condition
> must "serve[ ] as 'a substantial factor in causing the injury and without
> which the injury would not have occurred.'"  *Id.* (quoting *Del Lago Partners,
> Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010)).  When a condition or use of
> property merely furnishes a circumstance "that makes the injury possible,"
> the condition or use is not a substantial factor in causing the injury.  *Bossley*,
> 968 S.W.2d at 343.  To be a substantial factor, the condition or use of the
> property "must actually have caused the injury."  *Posey*, 290 S.W.3d at 872
> ("This nexus requires more than mere involvement of property; rather, the
> condition must actually have caused the injury.").

*Sanchez*, 494 S.W.3d at 726.

Zawislak argues here that the trial court erred when it failed to determine that

TAMHSC's KSTAR assessment materials are tangible personal property and that their

use or defective condition proximately caused him injury.  We disagree.

In determining whether sovereign immunity has been waived, courts look to the

real substance of a plaintiff's cause of action, not the plaintiff's characterization of his

claims.  *Kai Hui Qi*, 402 S.W.3d at 389.  Here, the real substance of Zawislak's negligence

claim was that TAMHSC used the KSTAR assessment materials to improperly test

Zawislak outside of his field of medicine, causing him personal injuries.  Zawislak did

not allege that TAMHSC's misuse of the tangible materials that TAMHSC employed to

conduct the KSTAR assessment caused his injuries.  Instead, Zawislak alleged that he was

injured because TAMHSC assessed or evaluated him using the wrong standard.  In other

words, TAMHSC misused the information that Zawislak gave to it, namely, that he is an EM physician and should be assessed as such.

Information itself, however, is "intangible" because it "is an abstract concept, lacking corporeal, physical, or palpable qualities." *York*, 871 S.W.2d at 179. "[T]he fact that information is recorded in writing does not render the information tangible property." *Id.* The foregoing allegations made by Zawislak in his negligence claim are therefore insufficient allegations that Zawislak's personal injuries were caused by a condition or use of tangible personal property. *See id.* at 178-79.

Furthermore, to the extent that Zawislak alleged that TAMHSC misused the results of the KSTAR assessment, such results are likewise information and not tangible property. *See id.*; *Cervantes v. McKellar*, 424 S.W.3d 226, 237 (Tex. App.—Texarkana 2014, no pet.) (holding that allegations of negligent interpretation and delayed response to information produced by medical monitoring equipment did not involve use of tangible personal property); *see also Univ. of Tex. Med. Branch at Galveston v. Crawford*, No. 14-18-00758-CV, 2019 WL 7372163, at *3 (Tex. App.—Houston [14th Dist.] Dec. 31, 2019, no pet.) (mem. op.) (stating that medical test results are information and not tangible personal property).

Zawislak did allege in his negligence claim that there were problems with the condition of some of the tangible KSTAR assessment materials, *i.e.*, Zawislak's allegations that about half of the electrocardiograms and several of the rhythm strips during the ERSIT had artifacts that would cause interpretation errors and that TAMHSC's computer frequently malfunctioned during the micro-cognitive computerized testing. But

Zawislak did not allege that those conditions caused any of his personal injuries. And, as stated above, for immunity to be waived under section 101.021(2), the plaintiff's injuries must have been proximately caused by the condition of the tangible personal property. *Sanchez*, 494 S.W.3d at 726.

Finally, Zawislak's reliance on *Lowe v. Texas Tech University*, 540 S.W.2d 297 (Tex. 1976), is misplaced. In *Lowe*, the Texas Supreme Court held that immunity was waived when a state actor provided equipment that lacked an integral safety component. *Id.* at 300 (providing football uniform without knee brace); *see Bishop*, 156 S.W.3d at 584. Zawislak did not allege here that the KSTAR assessment materials lacked an integral safety component. Furthermore, the Texas Supreme Court has clarified that *Lowe* represents "'the outer bounds of what we have defined as use of tangible personal property'" and has therefore applied the case "narrowly only when an integral safety component is entirely lacking rather than merely inadequate." *Bishop*, 156 S.W.3d at 584 (quoting *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996)). Accordingly, to the extent Zawislak alleged that TAMHSC did not actually use the KSTAR assessment materials but provided them to Zawislak to use, Zawislak did not allege a "use" claim under the TTCA. *See Sampson*, 500 S.W.3d at 389.

In light of the foregoing, we thus conclude that Zawislak's pleadings did not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction. Accordingly, the trial court did not err in granting TAMHSC's plea to the jurisdiction as to Zawislak's negligence claim. *See Starks*, 500 S.W.3d at 567. We overrule Zawislak's third issue.

## OPPORTUNITY TO REPLEAD

In his second issue, Zawislak contends that the trial court erred when it dismissed his claims against TAMHSC with prejudice without allowing him the opportunity to amend the alleged pleading defects.

In granting TAMHSC's plea to the jurisdiction, the trial court necessarily concluded that Zawislak's pleadings did not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction. Furthermore, for the reasons explained in our discussion of Zawislak's third issue, we have also reached the conclusion that Zawislak's pleadings did not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction.

A plaintiff should nevertheless generally be afforded a reasonable opportunity to amend defective pleadings unless the pleadings demonstrate incurable defects or negate the existence of jurisdiction. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839-40 (Tex. 2007). But Zawislak's pleading defects cannot be cured, and he has made no suggestion as to how to cure the jurisdictional defect. Accordingly, we overrule Zawislak's second issue.

## CONCLUSION

Having overruled all of Zawislak's issues, we affirm the trial court's judgment.


MATT JOHNSON
Justice

Before Chief Justice Gray,
     Justice Johnson, and
     Justice Davis[2]
Affirmed
Opinion delivered and filed June 23, 2021
[CV06]



---

[2] The Honorable Rex Davis, Senior Justice of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.