# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00695-CV

**Panda Sherman Power Intermediate Holdings I, LLC;
Panda Power Generation Infrastructure Fund, LLC, d/b/a Panda Power Funds;
and Panda Sherman Power Holdings, LLC, Appellants**

**v.**

**H.B. "Trip" Doggett; Warren Lasher; Bill Magness; and Kent Saathoff, Appellees**

### FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-18-002944, THE HONORABLE JAN SOIFER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellants Panda Sherman Power Intermediate Holdings I, LLC; Panda Power Generation Infrastructure Fund, LLC, d/b/a/ Panda Power Funds; and Panda Sherman Power Holdings, LLC (collectively, Panda) in 2018 sued executives of the Electric Reliability Council of Texas (ERCOT) for alleged fraudulent representations upon which Panda relied to its detriment and for alleged conspiracy to commit such fraud. In a combined order, the trial court granted the ERCOT executives' plea to the jurisdiction and motion to dismiss filed under the Texas Citizens Participation Act (TCPA), *see* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011,[1]

---

[1] Since this lawsuit was filed, the TCPA has thrice been amended—in 2019, 2021, and 2023—but those amendments do not apply to this lawsuit. *See, e.g.*, Act of May 17, 2019, 86th Leg., R.S., ch. 378, §§ 11, 12, 2019 Tex. Gen. Laws 684, 687. Therefore, all TCPA citations are to the version of the statute applicable to this dispute, as it read before those respective amendments.

which rulings Panda challenges on appeal. For the following reasons, we affirm the trial court's order.

## BACKGROUND

For over ten years, this dispute has wended its way through Texas courts. The context is the now-deregulated electric-utility industry in Texas, set into motion by the Texas legislature in 1999 when it enacted the Texas Public Utility Regulatory Act (PURA) to restructure the industry. *See* Tex. Util. Code §§ 39.001–.919. Pursuant to PURA, the Public Utility Commission of Texas (PUC) was required to certify an "independent system operator" (ISO) to, among other functions, "ensure the reliability and adequacy of the regional electrical network." *See id.* § 39.151(a)–(c). In 2001, the PUC certified ERCOT, a Texas non-profit corporation, as the ISO.

Since then, ERCOT has managed intrastate transmission of electricity and performed other responsibilities assigned to it by statute and PUC regulations. *See Electric Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 631–32 (Tex. 2021) (*Panda I*). Among those duties is the annual publishing of "resource adequacy reports," providing a five-year forecast of the Texas power region's ability to generate and transmit sufficient electricity to meet projected demands, and specifically the publishing of a "Report on Capacity, Demand, and Reserves" (CDR) twice a year. *See id*. Participants in the electric industry, such as Panda, rely on the CDRs when deciding, for example, whether to invest in new generation plants or transmission facilities. *See id.* at 632.

In 2011 and 2012, ERCOT's CDRs projected a likelihood of severe energy shortfalls. Panda alleges that it relied on these reports when it decided to invest over $2 billion

to build new power plants. After Panda began construction, however, ERCOT revised its forecasts and—instead of projecting a shortfall—now predicted an excess of generation capacity in the ERCOT region. Claiming that ERCOT's original CDRs misled it to invest in losing endeavors, Panda initially sued ERCOT and several of its executives (three of whom are the same as those sued in this suit) in Grayson County.[2] The Grayson County trial court denied ERCOT's plea to the jurisdiction—in which ERCOT claimed to enjoy sovereign immunity and that the PUC has exclusive jurisdiction over the dispute—and ERCOT filed an interlocutory appeal and a petition for writ of mandamus in the Fifth Court of Appeals. That court dismissed ERCOT's interlocutory appeal by determining that ERCOT is not a governmental unit entitled to an interlocutory appeal, *see* Tex. Civ. Prac. & Rem. Code § 51.014(a)(8), but nonetheless granted conditional relief on the mandamus petition, directing the trial court to vacate its order denying ERCOT's plea to the jurisdiction, because it determined that ERCOT enjoys sovereign immunity due to its performance of mandatory regulatory duties. *See Electric Reliability Council of Tex., Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 552 S.W.3d 297, 319–20 (Tex. App.—Dallas 2018), *pet. dism'd w.o.j.*, *Panda I*, 619 S.W.3d 628.

While the Fifth Court's decision in the interlocutory appeal was under review by the supreme court, the trial court rendered a final judgment dismissing the case, which mooted both ERCOT's interlocutory appeal and Panda's petition for writ of mandamus. *See Panda I*, 619 S.W.3d at 631. Noting that the now-final judgment of the trial court was already the subject of a separate pending appeal in the Fifth Court, the supreme court dismissed for want of jurisdiction both the mandamus petition and the appeal. *Id.*

---

[2] Panda named three of the four executives as defendants but never served them, and in an amended petition it removed them as defendants, effectively nonsuiting them and proceeding thereafter solely against ERCOT.

3

While that second appeal was pending in the Fifth Court, Panda filed this underlying second lawsuit in Travis County against only the ERCOT executives, not ERCOT itself, purportedly for the executives' individual alleged acts of fraud and conspiracy stemming from the CDRs and other alleged misrepresentations. Before any discovery could be conducted, the ERCOT executives filed a plea to the jurisdiction and a TCPA motion to dismiss. In their plea to the jurisdiction, the ERCOT executives asserted that Panda's claims (1) fall within the exclusive jurisdiction of the PUC and (2) are barred by sovereign immunity and that (3) by electing to sue ERCOT in the first lawsuit, Panda is forever barred from bringing these claims against the ERCOT executives under Section 101.106(a) of the Texas Tort Claims Act (TTCA). *See* Tex. Civ. Prac. & Rem. Code § 101.106 ("Election of Remedies").

The trial court granted both the plea to the jurisdiction and the TCPA motion and awarded the ERCOT executives attorney's fees and sanctions under the TCPA. *See id.* § 27.009. Panda appealed to this Court, which abated the appeal per Panda's unopposed motion pending the supreme court's review of the then-pending second appeal from the Fifth Circuit, which the supreme court consolidated for review with another case involving identical issues of law pertaining to whether ERCOT enjoys sovereign immunity. *See CPS Energy v. Electric Reliability Council of Tex., Inc.*, 671 S.W.3d 605 (Tex. 2023) (*Panda II*). That appeal has recently concluded, and we accordingly reinstated this appeal.

## DISCUSSION

### *Whether the trial court erred in granting the ERCOT executives' plea to the jurisdiction*

In its first issue, Panda contends that the trial court erred in granting the ERCOT executives' plea to the jurisdiction, which ruling we review de novo. *See Matzen v. McLane*,

4

659 S.W.3d 381, 388 (Tex. 2021). The supreme court's recent decision in *Panda II* resolves Panda's first issue on appeal. In that opinion, the supreme court determined that ERCOT is entitled to sovereign immunity and that the PUC has exclusive jurisdiction over the claims at issue. *See Panda II*, 671 S.W.3d at 611. When an agency has exclusive jurisdiction over disputes that arise within the agency's regulatory arena, the trial courts lack original jurisdiction over the dispute and must dismiss the case to allow a plaintiff to first exhaust all administrative remedies. *See Oncor Electric Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 138 (Tex. 2018); *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 544 (Tex. 2016).

The supreme court in *Panda II* determined that PURA Section 39.151 constitutes a "pervasive regulatory scheme" that imparts exclusive jurisdiction on the PUC over an ISO (here, ERCOT), including "complete authority" to oversee and investigate ERCOT's finances, budget, and operations. *See Panda II*, 671 S.W.3d at 618. The PUC's exclusive jurisdiction includes "adjudicatory power" also, in that the PUC may "take appropriate action" to hold ERCOT accountable as appropriate. *See id.* at 618–19. Furthermore, the supreme court determined that the claims asserted by Panda—concerning whether the CDRs were fraudulent and whether ERCOT properly performed its functions, operations, and duties—fall within the scope of the PUC's exclusive jurisdiction. *See id.* That the PUC may not be authorized to award damages or other relief that might be available for Panda's claims under common law does not alter the PUC's original, exclusive jurisdiction. *See id.* at 619; *see also Chaparral Energy*, 546 S.W.3d at 141 (concluding that one electric utility suing another for breach of contract was required to first exhaust administrative remedies at PUC before seeking relief in district court due to "comprehensive regulatory scheme" created by PURA granting PUC exclusive jurisdiction over electric utilities' rates, operations, and services).

We see no exception to the PUC's exclusive jurisdiction over the matters alleged in this lawsuit merely because Panda characterizes this lawsuit as being against the ERCOT executives in their "individual" capacities rather than in their "official" capacities. Panda is correct in its assertion that employees of entities that are entitled to sovereign immunity may not rely on sovereign immunity when sued in their individual capacities but must, instead, establish the affirmative defense of official immunity. *See Texas A&M Univ. v. Starks*, 500 S.W.3d 560, 576 (Tex. App.—Waco 2016, no pet.); *Cloud v. McKinney*, 228 S.W.3d 326, 333 (Tex. App.—Austin 2007, no pet.); *see also Franka v. Velasquez*, 332 S.W.3d 367, 383 (Tex. 2011) ("[P]ublic employees (like agents generally) have always been individually liable for their own torts, even when committed in the course of employment, and suit may be brought against a government employee in his individual capacity."). However, the capacity in which Panda has purportedly sued the executives, without more, does not remove its dispute concerning the executives' actions (taken in the scope of their employment at ERCOT) from the PUC's exclusive jurisdiction—a related, but separate, inquiry from whether they or ERCOT enjoy sovereign immunity. The allegations in this lawsuit are substantively the same as in the first lawsuit and directly concern ERCOT's operations, functions, and duties. As the supreme court determined in *Panda II*, PURA's grant of "extensive authority" to the PUC over ERCOT's operations, functions, and duties constitutes a "pervasive regulatory scheme" whereby the regulatory process is the exclusive means of remedying the problem to which PURA is addressed. *See* 671 S.W.3d at 618. The supreme court determined in the first lawsuit that because Panda's claims— stemming primarily from the allegedly fraudulent, statutorily required CDRs—concern whether ERCOT "properly performed" its operations, functions, and duties, the issues underlying Panda's fraud claims fall within the PUC's exclusive jurisdiction. *See id.* at 618–19. Moreover, two of

6

the four executives Panda has sued are current or former CEOs of ERCOT, whose selection is subject to PUC review and approval. *See id.* at 624. Additionally, in *Panda II*, Panda conceded at oral argument that the PUC "could have controlled the CDR data output had it wanted to." *Id.* at 625.

It is axiomatic that governmental and corporate entities can only act through their officers, directors, and employees. *See, e.g.*, *Dallas Cnty. Hosp. Dist. v. Sosa*, No. 05-19-01164, 2020 WL 4581666, at *6 n.5, (Tex. App—Dallas Aug. 10, 2020, pet. denied) (mem. op.). And it is now clear that ERCOT is "directly responsible and accountable to the [PUC]." *See Panda II*, 671 S.W.3d at 624 (citation omitted). Because of the legislature's "pervasive regulatory scheme" requiring the PUC to adjudicate in the first instance disputes about all matters concerning ERCOT's operations, it follows that any complaints about how ERCOT's officers and employees carry out those statutory functions—the only means through which ERCOT can effectuate its functions—must also be raised first at the PUC. To hold otherwise would frustrate the purposes of agency exclusive jurisdiction, allow for the possibility of inconsistent dispositions of identical disputes due merely to the capacity in which government employees are sued, and unnecessarily tax judicial resources.[3] *See Clint Indep. Sch. Dist.*, 487 SW.3d at 544–45 (noting that exhaustion-of-administrative-remedies requirement ensures that appropriate body

---

[3] We acknowledge that while ERCOT's sovereign immunity "prevents the courts from enforcing a monetary judgment against" ERCOT itself, *see CPS Energy v. Electric Reliability Council of Tex.*, 671 S.W.3d 605, 627 (Tex. 2023), there remains an unresolved question of whether Panda—after exhausting its administrative remedies—may obtain a monetary judgment in court against the executives individually. *See Oncor Elec. Delivery Co. v. Chaparral Energy, LLC*, 546 S.W.3d 133, 141–42 (Tex. 2018) (acknowledging that even though PUC does not have power to award monetary damages, PURA "does not prevent [plaintiff] from obtaining the damages it seeks in the district court *after* the PUC has exercised its exclusive jurisdiction" and applies its "unique expertise to resolve the issues that fall within its exclusive jurisdiction"); *see id.* at 145 (noting that dismissal of utility's lawsuit for want of jurisdiction was without prejudice to its right to refile claim after PUC exercised exclusive jurisdiction).

adjudicates dispute in first instance; allows for orderly procedure to enforce rights; permits agency to apply its expertise, exercise its discretion, and develop complete factual record; and potentially avoids expense and delay of litigation).

Accordingly, because the PUC has exclusive jurisdiction over Panda's claims, we overrule Panda's first issue and hold that the trial court properly granted the ERCOT executives' plea to the jurisdiction.

### Whether the trial court erred in granting the ERCOT executives' TCPA motion

To resolve Panda's second through fourth issues—which challenge the trial court's granting of the executives' TCPA motion—we must determine whether, given that the trial court properly determined that it did not have jurisdiction over Panda's claims, the trial court could additionally have granted the ERCOT executives' TCPA motion and awarded attorney's fees and sanctions thereunder. *See* Tex. Civ. Prac. & Rem. Code § 27.009(a)(1) ("If the court orders dismissal of a legal action under this chapter, the court shall award to the moving party . . . court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require."). Panda contends that if the trial court lacked jurisdiction over its claims against the ERCOT executives, it necessarily follows that the trial court could not have granted the ERCOT executives' TCPA motion because "[w]ithout jurisdiction the court cannot proceed at all in any case; it may not assume jurisdiction for the purpose of deciding the merits of the case." *See Finance Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 578 (Tex. 2013) (citations omitted). In other words, Panda argues, the trial court could not resolve the TCPA motion if it lacked subject-matter jurisdiction over its claims.

8

*See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000) ("[A] court must not act without determining that it has subject-matter jurisdiction to do so[.]").

But determining whether the ERCOT executives are entitled to dismissal of Panda's "legal action" under the TCPA is not the assumption of jurisdiction for the purpose of deciding the case's merits, and while this appeal was abated, this Court issued an opinion deciding this very issue. *See de la Torre v. de la Torre*, 613 S.W.3d 307, 314–15 (Tex. App.—Austin 2020, no pet.) (holding that TCPA "legal action" is not limited to filings over which court has jurisdiction but also includes litigant's successful challenge to "legal action" on jurisdictional grounds and remanding for determination of TCPA fees and sanctions after determining appellee lacked standing to pursue false-police-report claim). *But see id.* at 316–17 (Goodwin, J., dissenting). We must follow our own precedent, and thus, having determined that the trial court lacked jurisdiction over Panda's claims, we nonetheless may proceed to consider whether the trial court properly dismissed Panda's claims under the TCPA and awarded costs and sanctions thereunder. *See id.* at 314–15.

The TCPA is designed to protect a defendant's rights of speech, petition, and association and a claimant's right to pursue valid legal claims for injuries caused by the defendant, *Montelongo v. Abrea*, 622 S.W.3d 290, 295 (Tex. 2021), and the legislature has instructed that the act shall be "construed liberally to effectuate its purpose and intent fully," Tex. Civ. Prac. & Rem. Code § 27.011(b). In furthering its purpose, the TCPA establishes a three-step, burden-shifting process to evaluate whether a legal action should be dismissed for improper infringement of protected rights. *See Montelongo*, 622 S.W.3d at 295–96.

First, a party seeking dismissal bears the burden of showing by a preponderance of the evidence that the nonmovant's legal action is related to, is based on, or is in response to a

9

party's exercise of the right of free speech, right to petition, or right of association. Tex. Civ. Prac. & Rem. Code §§ 27.003(a), .005(b); *Montelongo*, 622 S.W.3d at 296. As relevant to this case, the "exercise of the right of free speech" means "a communication made in connection with a matter of public concern," Tex. Civ. Prac. & Rem. Code § 27.001(3), and a "communication" is "the making or submitting of a statement or document in any form or medium," *id.* § 27.001(1). If the movant meets its burden under the first step of the analysis, the trial court must dismiss the action unless the nonmovant establishes by clear and specific evidence a prima facie case for each element of its claim. *Id.* § 27.005(b), (c); *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015). The factual allegations in a plaintiff's petition may alone be sufficient to establish a prima facie case. *See Serafine v. Blunt*, 466 S.W.3d 352, 360 (Tex. App.—Austin 2015, no pet.). Finally, even if the nonmovant satisfies its burden of establishing a prima facie case, the court "shall dismiss a legal action against the moving party if the moving party establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Tex. Civ. Prac. & Rem. Code § 27.005(d).

In determining whether the TCPA applies and whether to dismiss the case, the trial court considers "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a); *In re Lipsky*, 460 S.W.3d at 587. We review de novo whether a movant met its burden of showing the TCPA's applicability. *See Serafine*, 466 S.W.3d at 357. Additionally, a nonmovant can avoid the burden-shifting requirements by showing that one of the TCPA's several exemptions applies. *Molina Healthcare, Inc. v. State ex rel. Thurmond*, No. 03-20-00077-CV, 2020 WL 7233609, at *2 (Tex. App.—Austin Dec. 9, 2020, pet. denied) (mem. op.) (citing *State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018)). A nonmovant has the burden to prove that a statutory exemption

10

from application of the TCPA applies, *Martin v. Walker*, 606 S.W.3d 565, 569 (Tex. App.—Waco 2020, pet. denied), and we review de novo a trial court's determination regarding the applicability of a TCPA exemption, *Grant v. Pivot Tech. Sols., Ltd.*, 556 S.W.3d 865, 873 (Tex. App.—Austin 2018, pet. denied).

*Whether the TCPA applies*

In their motion, the ERCOT executives argued that the TCPA applies because Panda's claims are related to, based on, or in response to the executives' exercise of the right of free speech. In determining whether the executives met their initial burden to demonstrate that the TCPA applies, *see* Tex. Civ. Prac. & Rem. Code §§ 27.003(a), .005(b), we look to the allegations in Panda's pleadings, *see Hersh v. Tatum*, 526 S.W.3d 462, 465–67 (Tex. 2017). Panda acknowledges in its briefing that courts construing the version of Section 27.003 applicable to this dispute did so broadly, as necessitated by the statute's use of the words "related to." *See, e.g.*, *Amini v. Spicewood Springs Animal Hosp., LLC*, No. 03-18-00272-CV, 2019 WL 5793115, at *6 (Tex. App.—Austin Nov. 7, 2019, no pet.) (mem. op.); *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 204 (Tex. App.—Austin 2017, pet. dism'd). Thus, for purposes of this case, if Panda's fraud and conspiracy claims are "related to" the ERCOT executives' exercise of the right of free speech, the TCPA applies. The right of free speech is defined as "a communication made in connection with a matter of public concern," with "public concern" including "environmental, economic, or community well-being" and "a good, product, or service in the marketplace." *See* Tex. Civ. Prac. & Rem. Code § 27.001(3), (7)(B), (E).

11

In its petition, Panda alleges that the ERCOT executives published "false and misleading market reports" (the CDRs), including filing the reports with the PUC and the North American Reliability Corporation; broadcasted the false market data to news media and to participants through presentations at market conferences, trade shows, and industry events; made direct representations about the false data to Panda representatives at meetings; "covered up" the false reports by silencing ERCOT employees who identified problems with the reports; and conspired with one another through such conduct to further a common, unlawful objective. According to Panda's petition, these reports and statements constituted "expert assessments" of power capacity and demand in Texas. It alleges that CDRs "identif[y] the reserve margin that the PUC[] says is essential to guarantee the reliability of power delivery to consumers in times of extreme demand" and constitute the "cornerstone of investment decisions made by those wishing to invest or construct power plants in the ERCOT region."

We conclude that these types of communications about the power industry in Texas—including "expert assessments" of capacity, shortages, surplus, demand, and supply—involve matters of public concern both because they concern a good or service in the marketplace (i.e., electricity and its generation and delivery) and because the power grid and its reliability constitute a component of community well-being. Thus, we hold that under the applicable version of the TCPA, Panda's claims are based on, related to, or in response to the ERCOT executives' exercise of the right of free speech. *See id.*

*Whether the commercial-speech exemption applies*

We next consider Panda's contention that, even if its lawsuit falls under the TCPA under the first step of the analysis, the commercial-speech exemption applies to remove the

12

lawsuit from the TCPA's purview. That exemption provides that the TCPA does not apply to "a legal action brought against a person primarily engaged in the business of selling or leasing goods or services if the statement or conduct arises out of the sale or lease of goods, services, . . . or a commercial transaction in which the intended audience is an actual or potential buyer or customer." *Id.* The Texas Supreme Court has construed the exemption to apply when:

(1) the defendant was primarily engaged in the business of selling or leasing goods [or services],

(2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services,

(3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and

(4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018).

"The burden to establish the commercial-speech exemption is on the party relying on it." *Grant*, 556 S.W.3d at 887. We consider the pleadings and record evidence to determine whether a party has met its burden on the exemption's elements. *See Rose v. Scientific Mach. & Welding, Inc.*, No. 03-18-00721-CV, 2019 WL 2588512, at *4 (Tex. App.—Austin June 25, 2019, no pet.) (mem. op.). Factual allegations in a plaintiff's petition alone may be sufficient to meet the exemption's elements. *See id.*; *see also Dickens v. Jason C. Webster, P.C.*, No. 05-17-00423-CV, 2018 WL 6839568, at *6 (Tex. App.—Dallas Dec. 31, 2018, no pet.) (mem. op.) (analyzing plaintiff's allegations in petition to determine what statements or conduct were at issue and concluding that plaintiff failed to show that defendant's alleged statements or conduct satisfied elements of commercial-speech exemption).

13

Panda argues that the ERCOT executives are primarily engaged in the business of selling services because ERCOT charges a fee for "a wide range of services [it provides] to the ERCOT market and its individual participants," including Panda. Panda cites ERCOT's website and PURA Section 39.151(e) to support this contention. *See* Tex. Util. Code § 39.151(e) (authorizing ISO to "charge to wholesale buyers and sellers a system administration fee"); ERCOT: Client Services, *available at https://www.ercot.com/services/client_svcs* (last visited Nov. 21, 2023) ("Each Market Participant is assigned an Account Manager who serves as a single point of contact for ERCOT. Account Managers assist Market Participants with . . . day-to-day business needs . . . includ[ing] Initiating and Revising Registration, Navigating through Market Rules, [and] Operation and Business Issue Resolution"). The system administration fee is authorized by statute and set by the PUC at an amount that is reasonable and competitively neutral to fund ERCOT's approved budget. *See Panda Power Generation Infrastructure Fund*, 552 S.W.3d at 315. A "market participant" (such as Panda) is statutorily required to pay ERCOT "all amounts owed" to it, *see* Tex. Util. Code § 39.163(a), which necessarily includes the system administration fee.

The supreme court has determined that ERCOT performs the "uniquely governmental function of utilities regulation" and is thus an "organ of government." *See Panda II*, 671 S.W.3d at 616–17. ERCOT is statutorily "tasked with ensuring that (1) all electricity buyers and sellers have nondiscriminatory access to the region's transmission and distribution system, (2) the region's electrical network is reliable and adequate, (3) information regarding a customer's choice of retail electric provider is timely available to those who need it, and (4) electricity production and delivery are accurately accounted for." *Id.* at 616. It performs these functions and more under the direct oversight of the PUC and must do so in compliance

14

with PURA. *See id.* Further, ERCOT exercises delegated authority from the PUC to adopt and enforce rules relating to the reliability of the regional electrical network, to establish and enforce operating standards, and to oversee payment procedures for transactions by market participants. *Id.* at 616–17. Although in performing these functions and duties ERCOT and its employees necessarily provide what can rightly be considered "services," *see* Merriam-Webster Dictionary, https://merriam-webster.com/dictionary/service (relevantly defining "service" as "useful labor that does not produce a tangible commodity) (last visited Nov. 21, 2023), we cannot reasonably conclude that ERCOT's collection of the statutorily mandated fee from Panda and other market participants constitutes the "sale" of those or any other services.

Furthermore, to the extent that ERCOT, and particularly its executives in their roles at ERCOT, are "primarily engaged" in any "business," that "business" constitutes the fulfillment of ERCOT's statutory duties—not any commercial enterprise and not the sale of goods or services. *See id.*, https://merriam-webster.com/dictionary/business (defining "business" in some usages as "a usually commercial or mercantile activity engaged in as a means of livelihood," "trade," and "a commercial or sometimes an industrial enterprise" and in other usages as "role," "function," "mission," and "an immediate task or objective") (last visited Nov. 21, 2023). By its plain language, the commercial-speech exemption contemplates the latter type of engagement in business. *See* Tex. Civ. Prac. & Rem. Code § 27.010(a)(2) (employing terms "commercial," "sale," "lease," "buyer," and "goods"). ERCOT's primary engagement in regulatory or quasi-governmental "business" (i.e., functions) necessarily extends to ERCOT's executives, as organizations can only act through their agents and officers. In other words, ERCOT's "business" is its executives' as well.

We conclude that Panda cannot establish the first *Castleman* element, and we thus hold that the commercial-speech exemption does not apply to remove Panda's legal action from the TCPA's provisions.

*Whether the ERCOT executives established a valid defense*

Although usually the next step in a TCPA analysis is to determine whether the nonmovant established a prima facie case, we may dispense with that determination (essentially assuming that the non-movant met its burden) if the moving party establishes by a preponderance of the evidence "each essential element of a valid defense" to the nonmovant's claim. *See id.* § 27.005(d). In their TCPA motion, the ERCOT executives incorporated their jurisdictional defenses to Panda's claims and also argued that they had established their affirmative defenses of res judicata and limitations (as to its conspiracy claim). We have already determined in the executives' favor as to their jurisdictional defense of the PUC's exclusive jurisdiction over this dispute and Panda's failure to exhaust administrative remedies, and nothing in Section 27.005(b)'s text precludes the assertion of jurisdictional defenses to support a TCPA motion.[4] *See id.*; *de la Torre*, 613 S.W.3d at 314–15; *Holcomb v. Waller County*, 546 S.W.3d 833, 840 (Tex. App.—Houston [1st Dist.] 2018, pet. denied) (determining that, because county lacked standing to bring suit against defendant, it lacked cognizable claim for which it could establish prima facie case; thus, trial court lacked subject-matter jurisdiction over claim and movant was entitled to TCPA dismissal and fees).

---

[4] Because of our conclusion that the executives' jurisdictional defense sufficiently supports their TCPA motion, we do not address whether any of their additional asserted defenses support their motion.

16

Accordingly, we overrule Panda's second and third issues and hold that the trial court properly granted the ERCOT executives' TCPA motion.

*Whether the trial court erred in awarding attorney's fees "incurred" by ERCOT*

In its fourth issue, Panda contends that—even if the trial court had jurisdiction to consider the executives' TCPA motion and its granting of the motion was proper—the trial court nonetheless could not have awarded attorney's fees to the executives because those individuals did not "incur" any fees, only ERCOT did, because the attorney invoices at issue were billed to and paid by ERCOT.[5] *See* Tex. Civ. Prac. & Rem. Code § 27.009(a)(1) (requiring court granting motion to dismiss to award moving party "reasonable attorney's fees . . . incurred in defending against the legal action"). We reject this argument for two reasons. First, the TCPA does not expressly require that the fees be incurred *by the movant*. *Compare id.* § 27.009(a)(1) (requiring award "to the moving party" of costs and fees "incurred in defending against the legal action"), *with id.* § 74.351(b) (requiring award to affected physician of fees and costs "incurred by the physician"). The evidence in the record demonstrates that the fees were incurred in defending against Panda's legal action (i.e., this second lawsuit). Secondly, the supreme court has held that even where the relevant fee-shifting statute requires the fees to have been "incurred by" the movant, that requirement is satisfied if the fees are paid by someone else. *See Aviles v. Aguirre*, 292 S.W.3d 648, 649 (Tex. 2009) (per curiam) (holding that when party's insurer pays insured's attorney's fees, insurer stands in shoes of insured and thus insured "incurred" such

---

[5] Such payment is consistent with Article 11 of ERCOT's PUC-approved Bylaws, which requires ERCOT to indemnify its directors, officers, and employees "to the fullest extent" permitted by Chapter Eight of the Texas Business Organizations Code, *see* https://www.ercot.com/files/docs/2021/11/16/13_PUCT_Final_Order_20190117.pdf (last visited Nov. 21, 2023).

fees, being personally liable for them as well as any potential judgment); *see also Garcia v. Gomez*, 319 S.W.3d 638, 642 (Tex. 2010) ("A fee is incurred when one becomes liable for it."). We conclude that the trial court did not err in awarding attorney's fees with respect to the executives' TCPA motion even though the fees were paid by ERCOT, and we overrule Panda's fourth issue.[6]

## CONCLUSION

Having overruled Panda's issues, we affirm the trial court's order granting the ERCOT executives' TCPA motion to dismiss and granting the ERCOT executives' plea to the jurisdiction.

_____
Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Triana

Affirmed

Filed:  November 28, 2023

---

[6] In passing, Panda in this same issue also complains that the sanctions award of $24,124.90 is "excessive" and asserts that such amount should be no greater than a "de minimis amount." It supports this argument by a mere statement that "this is not the type of lawsuit the TCPA's sanctions provision is meant to deter" and citation to TCPA Section 27.009(a)(2) (requiring sanctions award in amount "court determines sufficient to deter the party who brought the legal action from bringing similar actions"). However, the size of an award does not in itself render an award excessive, *see Kinney v. BCG Att'y Search, Inc.*, No. 03-12-00579-CV, 2014 WL 1432012, at *12 (Tex. App.—Austin Apr. 11, 2014, pet. denied) (mem. op.), and Panda does not identify anything in the record to support its bare assertion that the award is excessive, *cf. id.* (noting that trial courts have discretion in awarding TCPA sanctions and may properly consider, among other factors, history of parties' litigation, including fact that current lawsuit is "culmination of multiple actions" concerning claims brought by plaintiffs for same harm). We thus do not further address this argument. *See* Tex. R. App. P. 38.1(i) (appellant's brief must contain "clear and concise argument for the contentions made, with appropriate citations to authorities and to the record").